Argued and submitted July 20, 2000, reversed and remanded for reconsideration
April 4, 2001

In the Matter of the Compensation of
Carol Bryant, Claimant.

SAIF CORPORATION
and Heritage Place,
*Petitioners,*

*v.*

Carol A. BRYANT,
*Respondent.*

(99-00894; CA A108495)

21 P3d 1104

Jerome P. Larkin argued the cause and filed the brief for petitioners.

Scott Michael McNutt, Jr., argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

The Workers' Compensation Board found that claimant's workplace injury was the major contributing cause of the need for treatment of her combined condition. Employer petitions for review of the Board's order. We reverse and remand.

Claimant worked as a caregiver at an assisted living facility. On May 24, 1998, a patient at the facility grabbed claimant from behind by her hair, pulled her neck back, and dragged her down a hallway. On July 1, 1998, employer accepted a cervical sprain as a nondisabling condition. On July 12, 1998, claimant went to the emergency room because she had been experiencing tingling and swelling in her hands for three days. The emergency room doctor diagnosed claimant with acute exacerbation of cervical radiculopathy.

Claimant was referred to Dr. Bert, who diagnosed her with probable cervical disc syndrome and arranged for a cervical spine MRI. The MRI revealed a straightening of the cervical spine and degenerative hypertrophic changes at the C4-5, C5-6, and C6-7 levels. Dr. Keiper also examined claimant. He diagnosed her with spondylitic degenerative changes with cord compression and early myelopathy at C5-6. Keiper, a neurosurgeon, recommended surgery to correct claimant's condition.

Shortly after Keiper's diagnosis, Dr. Duff and Dr. Morton examined claimant at employer's request. According to Duff and Morton, the symptoms claimant was presently experiencing in her hands might not have any causal relationship with her workplace injury. Alternatively, they reasoned that, even if there were some relationship, claimant's workplace injury had combined with her preexisting spondylosis and her spondylosis was "the major contributing cause of [her] current neck symptomatology[.]"

Employer denied that claimant's combined condition was compensable. It reasoned that her workplace injury had combined with her preexisting condition and had ceased to be "the major contributing cause of [her] combined condition and the disability and need for treatment resulting therefrom."

On February 1, 1999, Keiper performed surgery to relieve the compression on claimant's spinal cord.[1] He explained in a letter to claimant's counsel that the workplace injury had combined with claimant's preexisting spondylosis to cause the pain in her hands. Keiper concluded:

"[T]he major cause of [claimant's] disability was obviously the injury of 5/24/98. The need for surgery was 50/50 in that this preexisting condition was compressing the spinal cord and therefore the spinal cord needed to be decompressed to prevent further injury and to alleviate the symptoms in her hands. It was a combined cause."

Later in the letter, Keiper repeated that "[t]his condition is equally due to the preexisting condition and the acute injury." He also noted Duff and Morton's opinion that the present pain in claimant's arms could be unrelated to the combined condition. Keiper disagreed with that opinion and explained that the "flexion/extension injury" that claimant had suffered at work either caused or worsened the pain in her arms.

After reviewing Keiper's surgery report, Bert answered "yes" when asked whether the workplace injury was the "major cause of current disability and medical treatment including surgery[.]" He explained that the injury had "cause[d] a disc herniation at C5-6," a conclusion that did not find any express support in Keiper's surgical report.

A divided Board found that the injury was the major contributing cause of claimant's need for treatment. Relying on Bert and Keiper's opinions, the majority reasoned:

"Unlike the ALJ, we do not find Dr. Bert's diagnosis of a herniated disc to be a reason for discounting his opinion because we find that it is consistent with the pathological findings in [claimant's] neck. Furthermore, although Dr. Keiper said that claimant's condition was 'equally due to' her preexisting condition and the injury, he also further explained that the 'flexion/extension injury' either caused

---

[1] Keiper explained:

"[Claimant] underwent an anterior cervical discectomy and fusion at C5-6 because of compression of her spinal cord. The diagnosis is cervical spondylosis, central cord syndrome, and early myelopathy. The generator pain was the C5-6 disc."

claimant's pain or worsened the preexisting condition. Thus, viewing his entire report, we consider Dr. Keiper's opinion as showing that the compensable injury is the major contributing cause of claimant's need for treatment of her combined condition."

On review, employer argues that Keiper's opinion is legally insufficient to show that claimant's workplace injury was the major contributing cause of her need for treatment. It also challenges the Board's reliance on Bert's report. Employer does not argue that Bert's report is legally insufficient. Rather, it argues that, in light of what it perceives as Bert's misdiagnosis of a herniated disc, Bert's opinion does not provide substantial evidence to support the Board's opinion.

The parties do not dispute that claimant suffers from a combined condition. *See* ORS 656.005(7)(a)(B).[2] Their dispute centers initially on whether the Board properly relied on Keiper's opinion to find that claimant's workplace injury was the major contributing cause of the need for treatment of the combined condition. We explained in *SAIF v. Nehl*, 148 Or App 101, 106, 939 P2d 96, *on recons* 149 Or App 309, 942 P2d 859 (1997), *rev den* 326 Or 389 (1998), that a workplace injury may be the major contributing cause of the need for treatment of a combined condition but not the major contributing cause of the disability of the combined condition. In this case, Keiper stated that the workplace injury was the major contributing cause of the disability of the combined condition but only a 50-50 cause of the need for surgery.

The issue in this case arises because the Board found that Keiper's opinion showed that the workplace injury was the major contributing cause of the need for treatment. The Board thus transformed a statement that the injury was an equal cause of the need for treatment into a statement that the injury was the major contributing cause of the need for

---

[2] ORS 656.005(7)(a)(B) provides:

"If an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

treatment. We do not doubt that the Board has the authority to interpret what an ambiguous medical report means, *see SAIF v. Strubel*, 161 Or App 516, 522, 984 P2d 903 (1999), and it may be that the Board could satisfactorily explain why it interpreted Keiper's report the way it did. However, the Board's present explanation of its interpretation does not meet the test of substantial reason. *See Furnish v. Montavilla Lumber Co.*, 124 Or App 622, 863 P2d 524 (1993).

As an initial matter, the Board never explains why Keiper's statement that the "need for surgery was 50/50" is an ambiguous statement that the Board may interpret. Beyond that, the Board offered two explanations for its interpretation of Keiper's statement. It explained initially that "although Dr. Keiper said that claimant's condition was 'equally due to' her preexisting condition and the injury, he also further explained that the 'flexion/extension injury' either caused claimant's pain or worsened the preexisting condition." The fact, however, that Keiper found that the injury either caused claimant's pain or worsened her condition does not necessarily mean that the injury was the major contributing cause of the need for treatment. Indeed, it appears that the portion of Keiper's statement on which the Board relied addressed a separate issue.[3] The Board also explained that "viewing [Keiper's] entire report," his opinion showed that the injury was the major contributing cause of the need for treatment. The Board, however, never explained why the other portions of Keiper's opinion caused it to conclude that the quoted portion of Keiper's report means something other than what it appears to say. Neither explanation that the Board provided satisfies the test of substantial reason.

In finding that claimant's combined condition was compensable, the Board also relied on Bert's opinion. We do not know, however, whether the Board would reach the same

---

[3] The Board's discussion of Keiper's opinion, although not completely clear, suggests that it is relying on paragraph seven of Keiper's letter. That portion of Keiper's opinion appears to be addressed to the question raised in Duff and Morton's analysis of whether there was any causal connection between the workplace injury and the pain in claimant's arms. It does not appear to be addressed to the question whether the workplace injury was the major contributing cause of the need for treatment.

conclusion if it could rely only on Bert's opinion or whether the Board can provide a more complete explanation for its interpretation of Keiper's opinion. We accordingly reverse and remand for reconsideration. *See Skochenko v. Weyerhaeuser Co.*, 118 Or App 241, 245, 846 P2d 1212 (1993) (reversing and remanding where the Board's misinterpretation of some of the medical evidence may have influenced its ultimate conclusion); *Asten-Hill Co. v. Armstrong*, 100 Or App 559, 563, 787 P2d 890 (1990) (same).[4]

Reversed and remanded for reconsideration.

---

[4] Employer argues that the Board gave too much weight to Bert's opinion. As noted above, we do not know whether the Board will provide a sufficient explanation on remand for relying on Keiper's opinion, nor do we know whether the Board would reach the same conclusion if it could rely only on Bert's opinion. It would be premature to decide how much weight Bert's opinion will bear until we know how much weight the Board chooses to place on it.