In the Matter of the Compensation of
Larry R. Pruitt, Claimant.

SAIF CORPORATION
and 4 R Equipment LLC,
*Petitioners,*

*v.*

Larry R. PRUITT,
*Respondent.*

02-07445; A122515

108 P3d 586

Jerome P. Larkin argued the cause and filed the briefs for petitioners.

Philip H. Garrow argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Schuman, Judge, and Leeson, Judge pro tempore.

SCHUMAN, J.

**SCHUMAN, J.**

SAIF decided that employment with its insured, 4 R Equipment LLC, was not the major contributing cause of claimant's back injury and consequently denied that the injury was compensable. An administrative law judge (ALJ) and then the Workers' Compensation Board (board) disagreed. The board ordered SAIF to provide benefits. SAIF seeks review of that order. We affirm.

In 1984, claimant received treatment for a work-related back injury at L5-S1. He recovered almost completely, with minimal residual effects and no physical limitations. The compensability of that injury is not at issue. However, 15 years later, in March 2000, claimant began to experience low back pain that resembled the earlier pain. In March or May 1999 (the record is unclear which), he took a new job with a different employer, SAIF's insured in this case. His duties included driving a dump truck loaded with rock over unimproved ground. As the ALJ found (and SAIF does not dispute), "[t]he terrain was rough and the [truck] would bounce severely; occasionally [it] would hit such a bump that claimant would bounce in the cab and even strike his head on the top of the cab. In addition to driving the [truck], claimant also helped others changing anvils within the [rock] crusher. Claimant worked 12-hour days, six days a week."

The back pain continued, and claimant consulted Dr. Moore. She reviewed claimant's medical history, including his earlier surgery, and began to contemplate another surgery. SAIF then sent claimant to an insurer-arranged medical examination (IME) performed by Dr. Vessely. In a letter to SAIF on May 6, 2000, Vessely reported:

> "I have provided you a complete work history. I also have reviewed the photographs you provided, and went over them with the claimant. It is noted that the history I have, and am basing my opinion on, is that this man has worked for the last eight months driving the Cat wagon, eleven hours a day, at least, not being able to get out for breaks or lunch. This is an extremely unusual history. This man also is in a seat that does not have a lot of support; he

is driving over rough ground, and it appears from the history I have that this is the major contributing cause of this man's left radiculopathy. I have no history of any off work activities, and his preexisting situation does not seem to be a major contributing cause, as his surgery was done in 1985 and he never had any trouble with this until March 1, 2000.

"* * * * *

"I believe that this man's work activities have definitely caused a pathologic worsening, probably at the L5-S1 level. I am basing this on the fact that he has significant left sciatic radiculopathy, he has positive cross straight leg raising right to left, and significant positive leg raising on the left side * * *. His prior problem was on the right side.

"* * * * *

"The major contributing cause of the combined condition at this time is the work incident of March 1, 2000."

Shortly thereafter, however, Vessely began to change his mind. On June 7, 2000, he wrote, "I am concerned that the clinical picture and diagnostic studies are not adding up in this case. This man continues to have incapacitating pain, which is really inconsistent with what is seen on the MRI studies." Vessely reported to SAIF that claimant's condition stemmed not from any injury or condition at L5-S1, but rather from disc protrusions at L3-4 and L4-5. He recommended that SAIF accept those injuries as work related, and SAIF did so.

On July 17, 2000, Moore operated on claimant's back. Afterward, SAIF asked Vessely to review the surgical record to determine whether any procedures at L5-S1 were caused in major part by the work for SAIF's insured. In a letter of August 9, 2001, he answered, "I do not feel that the major contributory cause of the need for surgery at the L5-S1 level is the March 1, 2000 incident. [The cause of the need for surgery at that location] is all pre-existing." Moore, for her part, responded to a query from SAIF concurring in all of Vessely's reports to SAIF, including both the one from May 2000 indicating that claimant's job with SAIF's insured was the major contributing cause of his condition at L5-S1 and the subsequent reports indicating the opposite. The letter stated:

"Dear Dr. Moore:

"Enclosed please find the medical report from Jon C. Vessely, M.D., dated 05-06-00, 06-07-00, 07-12-00, 05-09-01, 07-25-01, 08-09-01. I would like your opinion as to the diagnosis(es), findings, tests, medically stationary date, work release and opinions and discussion contained in the report."

Moore checked the box opposite the following statement:

"Yes, I concur with the diagnosis(es), findings, tests, medically stationary date, work release and opinions and discussion as expressed in the report from Jon C. Vessely, MD."

SAIF subsequently closed the claim, finding that the conditions at L3-4 and L4-5 were compensable but the one at L5-S1 was not. Claimant received 23 percent unscheduled permanent partial disability compensation, which, on reconsideration, SAIF raised to 28 percent.

On September 13, 2002, the claim under consideration in this case began when claimant's attorney wrote SAIF requesting it to amend its notice of closure so as to include "[p]athological worsening of the degenerative disc disease at L5-S1." SAIF, as noted above, denied the claim, an ALJ reversed the denial, and the board affirmed the reversal.

The parties agree that the issue on appeal is whether claimant's "combined condition" claim is compensable under ORS 656.005(7)(a)(B). That statute provides:

"If an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

Thus, the narrow issue before the board was whether claimant's work for SAIF's insured was the major contributing cause of the need for treatment at L5-S1. The issue before us, in turn, is whether substantial evidence supports the board's conclusion that it was. In a case such as this one, involving

conflicting medical evidence, we will reverse the board "only when the credible evidence apparently weighs overwhelmingly in favor of one finding and the Board finds the other without giving a persuasive explanation." *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1998). That relatively deferential standard of review is conditioned by our holding in *Dietz v. Ramuda*, 130 Or App 397, 401, 882 P2d 618 (1994), *rev dismissed*, 321 Or 416 (1995): we will give evidentiary weight to a medical opinion in a combined condition case only if it "evaluat[es] the relative contribution of different causes of an injury or disease and decid[es] which is the *primary* cause" of the need for treatment. (Emphasis in original.) *Accord SAIF v. Bryant*, 173 Or App 402, 406, 21 P3d 1104 (2001).

SAIF contends that, under those legal standards, we must reverse the board because there is *no* medical opinion that states or clearly implies that work for SAIF's insured, as opposed to degenerative disc disease or scarring from claimant's earlier surgery, was the major contributing cause of the need for treatment at L5-S1. We disagree.

Moore's reports, seen (as the board suggests) "as a whole," support the board's order. Her first response to SAIF's query about claimant was ambiguous; she concurred with mutually exclusive reports from Vessely. In an attempt to clarify that ambiguity, claimant's attorney wrote Moore and asked her whether claimant's activities while working for SAIF's insured pathologically worsened or aggravated the preexisting condition at L5-S1. She responded that they did. Citing *Deitz* and *Bryant*, she also agreed that "*the* mechanism of this pathological worsening or aggravation [was] the continual twisting and jolting of driving a catwagon (dump truck) around a rock crushing site, causing inflammation, swelling and increased scarring[.]" (Emphasis added.) SAIF argues that those clarifications do not support the board's order because a work incident may be the precipitating cause of an aggravation without being its major cause. However, when Moore first examined claimant, she reviewed a detailed intake report prepared by her nurse practitioner that contained a complete history of claimant's earlier back injury and surgery. She was aware of the possible alternative causes of the condition at L5-S1. By agreeing that work for

SAIF's insured was *the* mechanism of worsening, as opposed to *a* mechanism of worsening, and knowing of the alternative possible mechanisms, she implied—and the board was permitted to infer—that it was the *only* mechanism. In other words, her clarifying reports, combined with other evidence in the record, demonstrate that she undertook to weigh the alternative causes for the condition, and they not only support the board's finding that work at SAIF's insured was the major contributing cause, but also reject the alternative explanations. We therefore conclude that the board did not err in ordering SAIF to accept claimant's combined condition. The order is supported by substantial evidence, and it is based on medical opinions that consider and reject alternative explanations.

Affirmed.