Argued and submitted July 23, 2007, affirmed April 9, 2008

In the Matter of the Compensation of
Antonio L. Martinez, Claimant.

SAIF CORPORATION
and ACW, Inc.,
*Petitioners,*

*v.*

Antonio L. MARTINEZ,
*Respondent.*

Workers' Compensation Board
0505356; A133246

182 P3d 873

Jerome P. Larkin, Special Assistant Attorney General, argued the cause and filed the opening brief for petitioners. With him on the reply brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Edward J. Harri argued the cause for respondent. With him on the brief was Philip H. Garrow.

Before Haselton, Presiding Judge, and Rosenblum, Judge, and Deits, Judge pro tempore.

HASELTON, P. J.

## HASELTON, P. J.

■ Employer ACW, Inc., and its workers' compensation insurer SAIF Corporation (SAIF) seek judicial review of an en banc opinion and order of the Workers' Compensation Board (board), which determined that there was a sufficient causal relationship between requested medical services, *viz.*, arthroscopic surgery, and claimant's accepted claim to support the compensability of those services under ORS 656.245. They assert that the board erred in so determining, because the requested services in fact pertained to a condition not encompassed within the accepted claim and claimant had not requested acceptance of that condition by way of a claim for a new or omitted medical condition, ORS 656.262(7)(a); ORS 656.267(1), or otherwise. We review for substantial evidence and errors of law, ORS 656.298(7); ORS 183.482, and to determine whether the board's analysis comports with substantial reason. *See Drew v. PSRB*, 322 Or 491, 500-01, 909 P2d 1211 (1996). For the reasons that follow, we affirm.

On January 10, 2004, claimant, a ranch hand, fell from a hay baler, landing directly on his left knee. Three days later, claimant submitted a claim for a left knee injury. An MRI revealed that claimant had a recurring tear in the horizontal cleavage of the left medial meniscus and a sprain of his left medial collateral ligament. In mid-February, Dr. Thomas performed a partial medial menisectomy to repair claimant's meniscal tear. On March 3, 2004, SAIF sent claimant an "Initial Notice of Acceptance," stating that claimant's "mild sprain left medial collateral ligament and recurrent tear horizontal cleavage left medial meniscus" were "[a]ccepted medical condition(s)." In August, claimant was determined to be medically stationary and, as a result, SAIF closed the claim, again identifying the "accepted condition(s)" as "mild sprain left medial collateral ligament and recurrent tear horizontal cleavage left medial meniscus."

On October 6, 2004, however, claimant returned to the doctor, complaining of gradually increasing pain in his left knee since he had returned to work. Claimant underwent an MRI, which revealed, among other things, that

"[t]here is a remnant of medial meniscus remaining with persistent horizontal cleavage tear within it. In addition, more importantly, however, he has what appears to be either a contusion or possibly a small focal area of osteo-necrosis in the lateral femoral condyle that was not present previously."[1]

After reviewing a bone scan, which noted that "spontaneous osteonecrosis is an additional differential consideration," Thomas's assessment was that "[t]here appears to be an area of osteochondritis dissecans lateral femoral condyle,"[2] and that condition was "likely as a result of the impact taken at the time of the patient's fall."

Thomas then referred claimant to Dr. Bollom, an orthopedist. Bollom concurred in Thomas's assessment that claimant had an area of osteochondritis dissecans on his lateral femoral condyle, which indicated the presence of osteo-necrosis and also included in his assessment "[l]eft knee pain with small radial and medial meniscal tear with possible post-meniscectomy changes only." Bollom determined that claimant would likely need additional surgery to address his continuing knee pain and concluded:

"I think that given his knee is in an unacceptable level with respect to pain, knee arthroscopy is reasonable. [Claimant] will likely be a candidate, if the overlying cartilage appears excellent, for anterograde drilling from an outside end technique. If the overlying cartilage is unacceptable, softened and fissured then certainly a debridement with micro fracture * * * procedure would be reasonable."

On January 17, 2005, Bollom's clinic sent a notice to SAIF, which stated, in part:

"The above referenced patient will be scheduled for surgery * * * when the claim is accepted and compensability is established. The diagnosis is: OSTEONECROSIS LEFT KNEE. The procedure will be: LEFT KNEE SCOPE,

---

[1] Osteonecrosis is "[t]he death of bone in mass, as distinguished from caries * * * or relatively small foci of necrosis in bone." *Stedman's Medical Dictionary* 1284 (27th ed 2000).

[2] "Osteochondritis dissecans" is the "complete or incomplete separation of a portion of joint cartilage and underlying bone, usually involving the knee, associated with epiphyseal aseptic necrosis." *Stedman's* at 1282.

DEBRIDEMENT, POSSIBLE DRILLING OF LFC OSTEONECROSIS[.]"

At SAIF's request, Dr. Woodward reviewed claimant's medical records, including imaging studies. Woodward did not diagnose any osteonecrosis in claimant's left knee and concluded that other conditions that claimant's knee presented were not caused by the fall at work. Although SAIF received Woodward's reports in February and March 2005, it did not respond to claimant's request for authorization. In July 2005, claimant's counsel sent a letter to SAIF requesting that SAIF "advise [claimant] * * * of SAIF's response to Dr. Bollom's request for surgery." SAIF immediately replied that "we will not be able to give authorization nor guarantee payment of [claimant's] surgery on the left knee * * * requested on 1/17/05."

In response to SAIF's letter, claimant sought administrative review of SAIF's decision not to authorize the requested surgery, filing his claim with the Medical Review Unit (MRU).[3] Responding to SAIF's argument that the proposed surgery "is not causally related to the accepted conditions," the MRU "transfer[red] the dispute regarding whether a sufficient causal relationship exists between the arthroscopy; debridement and possible drilling of the lateral femoral condyle osteonecrosis to the Workers' Compensation Board." Consequently, the MRU issued a "Defer and Transfer Order," transferring review of the claim to the Workers' Compensation Board.[4]

An administrative law judge (ALJ) initially considered the matter and determined, in part, that the conditions

---

[3] A claim for medical services may be disputed on the ground that the proposed treatment is inappropriate for the claimed condition, in which case the dispute is resolved by the MRU, or on the ground that the proposed treatment is not necessitated, in material part, by the compensable injury, in which case the matter is resolved by the board's hearings division, or both. ORS 656.704; *AIG Claim Services v. Cole*, 205 Or App 170, 178, 133 P3d 357, *rev den*, 341 Or 244 (2006).

[4] The MRU may, at its discretion, transfer cases to the board via a Defer and Transfer Order if it believes that there is a dispute about both the propriety of the proposed treatment—which it may determine—and the compensability of the condition itself. ORS 656.704(3)(b). That allows the board to determine whether the employer is liable for *any* medical payment before the MRU decides precisely what medical costs the employer must pay.

for which a left knee arthroscopy was proposed were caused in material part by the January 10, 2004 injury.

SAIF and employer appealed to the board. Before the board, as before the ALJ, they argued, in essence, that payment for medical services under ORS 656.245 is limited to accepted conditions. SAIF asserted: (1) The proposed surgery pertained to the diagnosis and treatment of claimant's purported osteonecrosis. (2) Because SAIF's March 3, 2004, acceptance encompassed only the ligament sprain and the meniscal tear—and not osteonecrosis—osteonecrosis was not encompassed within the "accepted claim." ORS 656.704(3)(b)(C). (3) Consequently, a necessary predicate of the board's determination with respect to the compensability of the proposed surgery was a "determination of the compensability of the medical condition [*viz.*, the osteonecrosis] for which medical services [*viz.*, the surgery] are proposed." (4) However, the board could not determine the compensability of the osteonecrosis, because claimant had not filed a request for acceptance of that condition as a new or omitted medical condition, or otherwise—that is, the board was procedurally precluded from determining the compensability of the osteonecrosis. (5) Thus, the board could not properly determine whether the proposed surgery satisfied the requisites of ORS 656.245(1)(a)[5] because such a determination would represent a "de facto" determination of the compensability of the osteonecrosis, bypassing applicable procedural requirements.

The board en banc unanimously rejected that analysis. The board reasoned that the dispute was cognizable under ORS 656.704(3)(b)(C), as concerning the causal relationship between the requested medical services and claimant's accepted claim. SAIF does not challenge that determination on review, and we agree with it. Claimant does not seek a determination that the underlying condition of osteonecrosis is compensable. The dispute concerns whether the

---

[5] ORS 656.245(1)(a) provides, in part:

"For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions caused in material part by the injury for such period as the nature of the injury or the process of the recovery requires, subject to the limitations in ORS 656.225[.]"

proposed surgery is compensable within claimant's existing claim. *See AIG Claim Services v. Cole*, 205 Or App 170, 133 P3d 357, *rev den*, 341 Or 244 (2006) (diagnostic procedures to determine extent of compensable injury cognizable under ORS 656.704(3)(b)(C)).

On the merits, the board concluded that the medical evidence established that the proposed surgery is compensable under ORS 656.245, because it was necessitated, in material part, by the compensable injury. In so holding, the board relied almost exclusively on the opinion and explanation of Bollom.[6] The board began by emphasizing that "Dr. Bollom's discussion establishes that the surgery as proposed [is] at least in part for diagnostic services, *i.e.*, to determine the cause or extent of the compensable injury." Invoking our opinions in *Sprague v. United States Bakery*, 199 Or App 435, 112 P3d 362, *adh'd to as modified on recons*, 200 Or App 569, 116 P3d 251 (2005), *rev den*, 340 Or 157 (2006), and *Counts v. International Paper Co.*, 146 Or App 768, 934 P2d 526 (1997), the board reasoned that the diagnostic aspect of the proposed arthroscopic surgery was compensable, because the predicate "compensable injury" here was claimant's sprain and meniscus tear resulting from the fall from the hay baler, and, in Bollom's opinion, the proposed surgery would determine, at least in part, the "cause and extent of the compensable injury." *See Counts*, 146 Or App at 771 ("[I]f diagnostic services are necessary to determine the cause or extent of a compensable injury, the tests are compensable whether or not the condition that is discovered as a result of them is compensable."). The board concluded:

> "[W]e conclude that the proposed surgery is for 'conditions caused in material part by the injury[.]' ORS 656.245(1). The proposed surgery is materially related to the compensable injury as treatment of continued symptoms that claimant's treating physicians reasonably relate causally to his injury. The medical evidence indicates that the surgery would determine the extent of the injury and appropriate treatment. Although there is a possibility that the proposed surgery could discover new medical conditions, we find that

---

[6] The board also referred in passing to Thomas's opinion, but did not explain how that otherwise or additionally supported its conclusion.

the persuasive medical evidence establishes that the surgery is proposed primarily to treat claimant's pain and determine the extent of the compensable injury."

On judicial review, SAIF continues to focus on whether ORS 656.245 requires payment for medical services for conditions that have not been accepted. ORS 656.245(1)(a) provides, in part:

"For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for *conditions caused in material part by the injury* for such period as the nature of the injury or the process of the recovery requires, subject to the limitations in ORS 656.225[.]"

(Emphasis added.) In SAIF's view, ORS 656.245 requires payment for medical services only for previously *accepted* conditions, because only accepted conditions have been found to be "caused in material part by the injury." SAIF contends that if, after claim closure, medical treatment is sought for a condition that is not among the accepted conditions, the claimant must seek acceptance of the condition as a new or omitted medical condition, ORS 656.262(7)(a); ORS 656.267(1), or otherwise, and that until the condition has been accepted or determined to be compensable, there is no obligation under ORS 656.245 to pay for medical services, and the board has no authority to find medical services for that condition compensable. To permit the board to authorize medical services for an unclaimed condition, SAIF contends, effects an "end run" around the requirements for processing and acceptance of new or omitted medical condition claims under ORS 656.267(1) and ORS 656.262(7)(a).

Here, SAIF asserts, the medical evidence shows that claimant's surgery is directed to treatment of osteonecrosis, for which a claim has never been filed, and that no matter what the condition's relationship to the original injury, no benefits may be ordered under ORS 656.245, until the condition has been accepted or determined to be compensable. Further, SAIF contends, substantial evidence does not support the conclusion that claimant's surgery is necessitated in material part by the accepted sprain and tear of the medial meniscus.

In claimant's view, the board correctly interpreted ORS 656.245 to require payment for claimant's surgery, either because claimant's current knee condition, toward which the surgery is directed, is materially related to claimant's compensable injury, or because the surgery is directed to diagnosis of claimant's condition. *See* ORS 656.245(1)(c)(H) (after claim closure, medical services necessary to diagnose the worker's condition are compensable).

■ We agree with claimant that the board's interpretation is consistent with the text of ORS 656.245, as we recently interpreted it in *Sprague*. In that case, the claimant suffered a torn meniscus of his left knee at work. More than 20 years later, and while working for a different employer, he suffered a compensable left knee injury that SAIF, his former employer's insurer, accepted as "disabling cartilaginous fragments" and "arthritis of the lateral compartment." *Sprague*, 199 Or App at 437, 438. The claimant's physician recommended a total knee replacement, but also recommended that the claimant lose a significant amount of weight in order for that surgery to be successful. The claimant sought benefits for gastric bypass surgery, so as to allow him to lose sufficient weight to undergo the knee replacement.

In considering whether the surgery was compensable, we carefully dissected ORS 656.245(1)(a):

"The first sentence in ORS 656.245(1)(a) begins with the phrase, 'For every compensable injury.' For purposes of application to claimant's circumstances, that phrase refers to the torn meniscus that claimant suffered [in 1976] while working for SAIF's insured. The next clause in the first sentence of the statute places the responsibility on employers and insurers to pay for medical services for 'conditions' caused in material part by the 'injury.' With regard to claimant's claim, the word 'conditions' in the phrase refers to claimant's knee condition, *i.e.*, the need for a total knee replacement. The same word could also refer to claimant's obesity condition if he is able to satisfy the other requirements of the sentence. The word 'injury' in that phrase refers again to claimant's torn meniscus."

*Sprague*, 200 Or App at 572.

■ Significantly for purposes of this case, we said in *Sprague* that the word "conditions" as used in ORS 656.245(1)(a) refers to the claimant's *current* conditions for which treatment is sought, and not, as SAIF contends, to the accepted conditions. Also significantly for this case, we said that "injury," as used in ORS 656.245(1)(a) refers to the "compensable injury," which, in *Sprague*, we described as the condition that had been accepted by SAIF in the original claim— the torn meniscus. Thus, to establish the compensability of a medical treatment under ORS 656.245(1)(a), the condition for which treatment is sought need not be the accepted condition; however, the treatment must be necessitated in material part by the "compensable injury," which, we said in *Sprague*, is the condition previously accepted.

In *Counts*, we explained that medical services to determine the cause or extent of a compensable injury are compensable under ORS 656.245, even if the condition that is discovered is not compensable. 146 Or App at 771. *See also* ORS 656.245(1)(c)(H) (medical services necessary for diagnosis of the claimant's condition continue to be compensable after a claimant has been determined to be medically stationary). The board in this case explained that it was persuaded by the opinions of doctors Bollom and Thomas that the proposed surgery was necessary, as a diagnostic tool, to explore whether the claimant's current symptoms are caused by the meniscal tear, and to determine the extent of his compensable injury. The board concluded, therefore, that the surgery is for "conditions caused in material part by the injury." We conclude that the board's order is supported by substantial evidence and substantial reason.

Affirmed.