Argued and submitted March 29, reversed and remanded for reconsideration December 29, 2011

In the Matter of the Compensation of
John D. Swartz, Claimant.

SAIF CORPORATION
and LDN Excavation, Inc.,
*Petitioners,*

*v.*

John D. SWARTZ,
*Respondent.*

Workers' Compensation Board
0900329; A145142

270 P3d 335

David L. Runner argued the cause for petitioners. On the briefs was Julene M. Quinn.

L. Leslie Bush argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Rosenblum, Senior Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Employer LDN Excavation, Inc., and its workers' compensation insurer SAIF Corporation (SAIF) seek judicial review of an order of the Workers' Compensation Board (board), which determined that the medical services requested by claimant were compensable under ORS 656.245(1)(a). That statute provides, in part, that, "[f]or every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions caused in material part by the injury * * *." The board found that there was a sufficient causal relationship between claimant's requested medical services—here, diagnostic tests—and his compensable injury. On review, SAIF and employer argue that the diagnostic services were not related to claimant's accepted condition but, instead, were for the sole purpose of diagnosing new conditions that were not compensable. Thus, they contend that the board erred in determining that the services were compensable. We review for substantial evidence and errors of law, ORS 656.298(7); ORS 183.482, and reverse and remand.

On July 20, 2007, claimant was working when he slipped and fell about five feet onto his tailbone and buttocks. He sought treatment and submitted a claim for a lumbar contusion. An MRI of claimant's spine showed abnormalities indicative of degenerative disc disease.[1] On August 27, 2007, SAIF accepted the claim for a "low back contusion," and claimant began treatment for that condition.

In November 2007, claimant was evaluated by Dr. Koon, who concluded that claimant continued to suffer from a low back contusion and "possible facet injury." Although a bone scan of claimant's spine was normal, in January 2008, Koon diagnosed claimant with "[p]ossible lumbar facet syndrome."[2] Based on Koon's assessment,

---

[1] The imaging revealed a small right paracentral disc protrusion with an associated annular tear, mildly narrowed bilateral neural foramina, and early facet degeneration at L4-5. Similarly, at L5-S1, there was mild disc degeneration, a central disc protrusion with a small annular tear, narrowed neural foramina, and early facet degeneration. At L3-4, there was moderate disc space narrowing and disc desiccation but no central canal or neural foraminal narrowing.

[2] Koon later testified that lumbar facet syndrome is pain from the facet joints due to inflammation in the synovial lining of the joint. He contrasted that condition

claimant requested that a condition of lumbar facet syndrome be added to his claim.

After an independent medical examination by Dr. Carr, SAIF denied that claim.[3] Carr concluded that there was a lack of objective evidence to support a diagnosis of lumbar facet syndrome and that the only way to determine if symptoms were coming from the facet joint would be to do facet joint injections. In any event, he opined, lumbar facet syndrome "in almost all cases" arises from degenerative changes. To the extent that defendant was experiencing lumbar pain, Carr explained, it was "encompassed in both the diagnoses of lumbar contusion and degenerative disc disease both of which can cause lumbar pain." Carr further concluded, however, that claimant's low back contusion had resolved and that his ongoing pain was likely due to his degenerative disc disease, which was unrelated to his July 2007 work injury.

In February 2008, claimant's low back contusion was determined to be medically stationary, and, in March, SAIF closed the claim. Claimant nonetheless continued to experience back pain, and, upon the recommendation of Koon, he sought approval for facet joint injections as a diagnostic service related to his compensable injury. Koon opined that claimant's work accident was the 60 percent cause of the need for treatment of the lumbar facet syndrome and that it would be reasonable to pursue facet joint injections. Carr disagreed, noting that, although claimant's "mechanism of injury is of the type that could have produced an injury to the facets," a facet injury would have produced a different pathological presentation if it were caused by the workplace incident. Thus, Carr concluded that the lumbar facet syndrome did not result from claimant's work accident and that, even if the accident were a contributing cause, it would not be the major contributing cause of the need for treatment (the major

with a contusion, which, he said, is trauma to the overlaying soft tissue rather than the "deeper structures" of the facet joints; he explained that a contusion causes symptoms of swelling, pain, and bruising.

[3] Upon mutual agreement of the parties, as embodied in an order of dismissal, claimant subsequently withdrew his claim for lumbar facet syndrome, and SAIF rescinded its denial. That order recognized that claimant could file a new claim for lumbar facet syndrome "at some point in the future if the condition is diagnosed."

cause instead being the underlying degenerative disease). SAIF declined to pay for the injections, and claimant sought review with the Medical Review Unit (MRU). The MRU transferred the claim to the Workers' Compensation Board.

Koon and Carr were deposed. Koon maintained that lumbar facet syndrome was a "good diagnosis" for claimant but noted that facet joint injections would provide more definitive diagnostic information. According to Koon, the injections were directed at diagnosing and treating lumbar facet syndrome. He explained that a "good response" to the injections would indicate that the joint is a pain generator, while a lack of response would indicate that there is an alternative source of pain, such as discogenic pain. Koon acknowledged that there were a number of "equally plausible" diagnoses for claimant's condition, including a chronic contusion, facet arthritis, or degenerative disc disease. However, "[i]n [his] mind," claimant's condition was more probably lumbar facet syndrome given the mechanism of injury and the lack of symptoms before the injury. Koon further opined that claimant's low back contusion had completely resolved and required no further treatment. He agreed that "[w]hat is going on here * * * has nothing to do with the contusion" and that "the results of th[e] contusion are * * * no longer contributing" to claimant's low back pain.

Carr testified that recent literature raised doubt about the diagnostic efficacy of facet joint injections, but he admitted that "if [claimant] was having persistent back symptoms, it would be part of the normal [diagnostic] workup." However, Carr thought that claimant's work injury was no longer a contributing cause of any need for treatment. Rather, Carr opined, claimant's current symptoms were a result of degenerative disease unrelated to his workplace accident.

An administrative law judge (ALJ) found that no medical evidence "causally connects the proposed facet injections to the accepted lumbar contusion." Consequently, the ALJ denied the compensability of the injections. Claimant sought review of that decision with the board, arguing that his current low back condition was "directly related to the work injury" and that the injections would help diagnose that

current condition. SAIF and employer responded that the ALJ correctly denied compensability because the injections were not necessitated in material part by the accepted condition, *i.e.*, the low back contusion. Claimant rejoined that the inquiry for determining the compensability of medical services is not limited to whether the services have a material relationship to the accepted condition but, instead, is properly focused on whether there is a relationship between the claimant's current condition and the original work injury—here, broadly defined as a "low back injury."

The board, with one dissent, reversed the ALJ, concluding that the injections were compensable medical services under ORS 656.245(1)(a) because they were "necessary, as a diagnostic tool, to explore whether claimant's current symptoms [were] caused by the accepted lumbar contusion, and to determine the extent of his compensable injury."[4] In drawing that conclusion, the board found Carr's testimony inconsistent and unpersuasive. It instead relied upon the testimony of Koon. The board reasoned:

> "Dr. Koon stated that the July 2007 compensable injury was the major contributing cause of claimant's current back condition, and that there were a number of potential diagnoses that would explain that condition. Among those diagnoses were both lumbar facet syndrome and a chronic lumbar contusion. According to Dr. Koon, * * * either diagnos[i]s was equally probable, and the proposed lumbar facet injections would assist in arriving at a more definitive diagnosis; *i.e.*, the injections were necessary to determine the extent of claimant's compensable injury. * * *

> "In other words, according to Dr. Koon, the extent of claimant's injury was unknown in the absence of the proposed lumbar facet injection, and he could not conclusively determine the extent of the compensable injury without the proposed diagnostic service. Based on this well-explained opinion, we find that the proposed lumbar facet injections were 'necessary to determine the * * * extent of [claimant's] compensable injury.' [*SAIF v. Martinez*, 219 Or App 182, 188, 182 P3d 873 (2008).]

---

[4] The board affirmed part of the ALJ's decision that is not before us on review.

"* * * [T]he evidence establishes that Dr. Koon believed that claimant's ongoing symptoms could be caused by the accepted contusion, and that the contusion could have become 'chronic.'

"Dr. Koon's separate observation concerning whether the contusion had resolved should not be read in isolation, but in the broader context of his other responses. The whole of Dr. Koon's opinion, read in context, establishes that the proposed lumbar facet injections were necessary to determine the source of claimant's symptoms and the extent of the compensable injury. In other words, we read Dr. Koon's opinion to say that, although it was likely that the lumbar contusion had resolved, it was equally likely that the contusion had become chronic. Thus, Dr. Koon asserted that the proposed lumbar facet injections were a reasonable diagnostic tool for purposes of the accepted contusion, and that, without the injections, he could not conclusively determine the extent of claimant's compensable injury.

"Based on the persuasiveness of Dr. Koon's opinion, we find a sufficient causal relationship between the proposed lumbar facet injections and claimant's compensable injury."

On review, SAIF and employer (collectively, petitioners) argue that the board erred in two respects. First, petitioners argue that the board misapplied the legal standard for compensability of medical services under ORS 656.245(1)(a). Specifically, they contend that the board's conclusion is based on one of two legally erroneous premises: either (1) the board "define[d] the compensable injury as the industrial accident," rather than the accepted low back contusion, leading it to conclude that there was a causal connection between the compensable injury and claimant's current condition; or (2) it reasoned that the injections would, by process of elimination, help to ascertain whether a chronic contusion was a likely diagnosis and, in so doing, would determine the "extent" of the accepted low back contusion. Second, petitioners argue that, even if the board applied the correct legal standard in determining the compensability of the injections, its findings were not supported by substantial evidence.

Claimant responds that medical services need not be related to the previously accepted condition in order to be compensable but, instead, need only relate to "the work injury," which claimant does not define but seems to regard as any condition resulting from the workplace accident: "As the ALJ, Board and the case law all discuss[ ], a diagnostic exam is [compensable if used] to establish the cause or extent of the work injury, not [merely] the narrowly defined condition that was already accepted." Claimant argues that Koon's testimony provides substantial evidence that claimant's condition—whether a chronic contusion or lumbar facet syndrome—arose out of the work injury. We also understand claimant to argue that, in any event, there was substantial evidence that the diagnostic services were necessary to determine the extent of the accepted low back contusion.

As an initial matter, the parties' contentions require us to address the meaning of the term "compensable injury" as used in ORS 656.245(1)(a). That statute provides:

> "*For every compensable injury, the insurer* or the self-insured employer *shall cause to be provided medical services for conditions caused in material part by the injury* for such period as the nature of the injury or the process of the recovery requires, subject to the limitations in ORS 656.225, including such medical services as may be required after a determination of permanent disability. In addition, for consequential and combined conditions described in ORS 656.005(7), the insurer or the self-insured employer shall cause to be provided only those medical services directed to medical conditions caused in major part by the injury."[5]

(Emphases added.)

ORS 656.005(7) defines "compensable injury" as "an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death" and as subject to various limitations and exclusions. We have previously concluded that the meaning of "compensable injury" in the context of ORS 656.245(1)(a) is the claimant's medical condition that is accepted for coverage

---

[5] The limitations in ORS 656.225 apply to preexisting conditions and are not at issue in this case.

by the insurer or employer. *See Sprague v. United States Bakery*, 199 Or App 435, 112 P3d 362, *adh'd to as modified on recons*, 200 Or App 569, 116 P3d 251 (2005) (*Sprague I*), *rev den*, 340 Or 157 (2006); *SAIF v. Martinez*, 219 Or App 182, 188, 182 P3d 873 (2008). In *Sprague I*, the claimant compensably tore his left meniscus in 1976. 200 Or App at 571. As a result of that injury, the claimant developed arthritis in his knee. More than 20 years later, his knee condition required total knee replacement surgery. However, in order for knee surgery to be effective, the claimant needed to lose a significant amount of weight. His doctor recommended gastric bypass surgery. The claimant submitted a medical services claim for gastric bypass surgery, asserting that the surgery was compensable under ORS 656.245(1)(a). The insurer denied the claim, and the board upheld the denial, reasoning that the claimant's knee condition was a "consequential condition" and that it was not "caused in major part by the [compensable] injury" under the second sentence of ORS 656.245(1)(a). *Id.* at 572. On review, we ultimately remanded for a consideration of whether the services were compensable under the first sentence of ORS 656.245(1)(a). In so doing, we explained:

> "The first sentence in ORS 656.245(1)(a) begins with the phrase, 'For every compensable injury.' For purposes of application to claimant's circumstances, that phrase refers to the torn meniscus that claimant suffered while working for SAIF's insured. The next clause in the first sentence of the statute places the responsibility on employers and insurers to pay for medical services for 'conditions' caused in material part by the 'injury.' With regard to claimant's claim, the word 'conditions' in the phrase refers to claimant's knee condition, *i.e.*, the need for a total knee replacement. * * * The word 'injury' in that phrase refers again to claimant's torn meniscus."

*Id.* After remand, the board allowed the claim for gastric bypass surgery, and SAIF and the employer sought review. We affirmed the board, *SAIF v. Sprague*, 221 Or App 413, 190 P3d 443 (2008) (*Sprague II*), and the Supreme Court ultimately affirmed our decision, *SAIF v. Sprague*, 346 Or 661, 217 P3d 644 (2009) (*Sprague III*), albeit on different grounds. *See Sprague III*, 346 Or at 672-75 (determining that the

claimant's arthritic knee condition was a "consequential condition," that it was caused in major part by the 1976 meniscus tear, and that the gastric bypass surgery was directed to that condition, thus satisfying the second sentence of ORS 656.245(1)(a)).

In *Martinez*, which was decided before the Supreme Court's decision in *Sprague III*, we followed our analysis of the first sentence of ORS 656.245(1)(a) as we described it in *Sprague I*. *Martinez*, 219 Or App at 190-91. The claimant in *Martinez* injured his left knee, and SAIF accepted a claim for a meniscus tear and a sprain of the medial collateral ligament. *Id*. at 184. The claimant received treatment, and, after his condition was determined to be medically stationary, his claim was closed. However, the claimant's knee continued to be a source of pain, and subsequent imaging studies revealed osteonecrosis in his knee. *Id*. at 184-85. The claimant's doctor recommended arthroscopic surgery, but SAIF refused to authorize payment for that service. *Id*. at 186. The board determined that the surgery was compensable under ORS 656.245. *Id*. at 187-88. On review, we affirmed, noting:

> "Significantly for purposes of this case, we said in *Sprague* that the word 'conditions' as used in ORS 656.245(1)(a) refers to the claimant's *current* conditions for which treatment is sought, and not, as SAIF contends, to the accepted conditions. Also significantly for this case, we said that 'injury,' as used in ORS 656.245(1)(a) refers to the 'compensable injury,' which, in *Sprague*, we described as the condition that had been accepted by SAIF in the original claim—the torn meniscus. Thus, to establish the compensability of a medical treatment under ORS 656.245(1)(a), the condition for which treatment is sought need not be the accepted condition; however, the treatment must be necessitated in material part by the 'compensable injury,' which, we said in *Sprague*, is the condition previously accepted."

*Id*. at 191 (emphasis in original).

Here, the parties do not ask us to overrule or otherwise qualify our previous interpretation of "compensable injury." Nor do the parties argue that the Supreme Court's opinion in *Sprague III* implicitly rejected our interpretation

of that term.[6] Thus, although the parties apparently differ in their interpretation of "compensable injury," they have not developed any argument addressing our prior interpretation or advancing a different construction of ORS 656.245(1)(a). In the absence of such an argument, we decline to revisit that interpretation in this case.

The board's order, although somewhat ambiguous, did purport to apply the standard we articulated in *Sprague I* and *Martinez* ("[T]he evidence establishes that Dr. Koon believed that claimant's ongoing symptoms could be caused by the accepted contusion[.]"). Applying that standard, this case reduces to the question of whether there is substantial evidence that the requested medical services—the facet joint injections—were "for conditions caused in material part by the injury" under ORS 656.245(1)(a). As we explained in *Martinez*, the "conditions" are the current conditions for which treatment is sought—here, claimant's ongoing low back pain. The "injury" or "compensable injury" is the previously accepted condition—here, a low back contusion. Properly reframed, then, the issues are (1) whether the low back contusion is the material cause of claimant's ongoing low back pain and (2) whether the injections are "for" that ongoing low back pain. *See Sprague III*, 346 Or at 673 (setting forth a similar analysis under the second sentence of ORS 656.245(1)(a)).

There is substantial evidence in the record, based on Koon's testimony, that the injections are "for" claimant's low back pain, and petitioners do not contend otherwise. Whether there is substantial evidence that the low back contusion is a material cause of claimant's low back pain is a closer question. A "material cause" is a fact of consequence. *See Mize v. Comcast Corp-AT & T Broadband*, 208 Or App 563, 569-71, 145 P3d 315 (2006) (interpreting "in material part" in ORS 656.245(1)(a)). Thus, the compensable injury

---

[6] We note that, to the extent that the Supreme Court addressed the issue, it stated, "The 'compensable injury' here is claimant's original meniscus tear, caused by a workplace accident in 1976." *Sprague III*, 346 Or at 672. That definition is seemingly coterminous with the "accepted condition."

could constitute a material cause if it makes "*any* contribution" to claimant's current condition. *Id.* at 569-70 (emphasis in original).

Here, both doctors testified unequivocally that claimant's low back contusion had resolved. Koon agreed that "[w]hat is going on here * * * has nothing to do with the contusion" and that "the results of th[e] contusion are * * * no longer contributing" to claimant's back pain. That testimony suggests that the contusion was not contributing *in any way* to claimant's continued low back pain; in other words, the contusion was not a material cause of claimant's current condition. Moreover, the record contains no evidence to the contrary. Koon's testimony that claimant might suffer from, among other things, a "chronic contusion" does not support an inference that claimant's accepted low back contusion was a material cause of his ongoing back pain. Rather, that testimony, viewed in context, merely indicates that Koon recognized that a chronic contusion was a theoretical possibility; he never indicated that, in his opinion, claimant's current back pain was caused in any way by a chronic contusion. Indeed, Koon believed that claimant's current symptoms were generated by the facet joints rather than the soft tissue, where the contusion injury was located. Thus, viewing the record as a whole, we conclude that there is not substantial evidence to support the board's finding that the requisite causal connection had been met.

The board also found, as a basis for determining that the injections were compensable, that the "the injections were necessary to determine the extent of claimant's compensable injury." *See* ORS 656.245(1)(c)(H) ("Notwithstanding any other provision of this chapter, medical services after the worker's condition is medically stationary are not compensable except for the following: * * * Services that are necessary to diagnose the worker's condition."); *Counts v. International Paper Co.*, 146 Or App 768, 771, 934 P2d 526 (1997) ("[I]f diagnostic services are necessary to determine the cause or extent of a compensable injury, the tests are compensable whether or not the condition that is discovered as a result of them is compensable."); *Martinez*, 219 Or App at 191 (same). Here, because the compensable injury had completely resolved and no longer contributed to any ongoing conditions,

the injections were not necessary to determine the extent of that injury. Thus, the board's order is not supported by substantial evidence.

Reversed and remanded for reconsideration.