Argued and submitted July 22, 2014, affirmed May 28, petition for review denied October 9, 2015 (358 Or 70)

In the Matter of the Compensation of
Dianne R. Weiker, Claimant.

Dianne R. WEIKER,
*Petitioner,*

*v.*

DOUGLAS COUNTY
SCHOOL DISTRICT NO. 4,
*Respondent.*

Workers' Compensation Board
1103645; A152818

350 P3d 569

Philip M. Lebenbaum argued the cause for petitioner. With him on the briefs was Hollander, Lebenbaum & Gannicott.

Rebecca A. Watkins argued the cause for respondent. On the brief were Deborah L. Sather, Lauren L. Oda, and Sather, Byerly & Holloway, LLP.

Before Sercombe, Presiding Judge, and Haselton, Chief Judge, and Tookey, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Claimant seeks judicial review of an order of the Workers' Compensation Board (board), which determined that the medical services requested by claimant were not compensable under ORS 656.245(1)(a). That statute requires claimant's self-insured employer to provide "medical services for conditions caused in material part" by a compensable injury. Claimant suffered a compensable injury, a traumatic blockage of the popliteal artery near her left knee, which was repaired by a popliteal bypass graft and several bypasses of other arteries to improve blood flow to the graft. Ten years later, because tests showed that several arteries leading to the popliteal graft were blocked and there was a lack of blood flow to that graft, doctors recommended an aortobifemoral bypass. The board determined that the medical evidence did not establish that the proposed aortobifemoral bypass was for any condition caused in material part by the traumatic blockage of the left popliteal artery. We review for substantial evidence and errors of law, ORS 656.298(7); ORS 183.482, and, for the reasons below, we affirm.

The facts are undisputed. In 1999, while claimant, a school custodian, was setting up some staging, a piece of the staging fell on her leg. She suffered a fracture to her left femur just above the knee and a traumatic occlusion of the popliteal artery at the fracture site—a blockage in the artery at the knee that connects the femoral artery in the upper leg to the tibial arteries in the lower leg. Employer accepted a claim for the left femur fracture and "traumatic occlusion of the popliteal artery," and it denied a claim for peripheral vascular disease—a broad term referring to narrowing of arteries outside the brain or heart that is associated with circulatory problems in the limbs.

To treat the popliteal artery occlusion, Dr. Landry and other doctors replaced the injured portion of the left popliteal artery with a left popliteal bypass graft. There was inadequate blood flowing into that graft, however, as a result of preexisting abnormal narrowing, called stenosis, in the arteries leading to that graft: the artery directly above the graft, the left femoral artery, and an artery in the pelvis area directly above that, the left common iliac artery.

The stenosis in those arteries was the result of preexisting artery occlusive disease—blockages in the arteries—which was caused by arteriosclerosis, an occlusive disease in which the blockages or narrowing are the result of the accumulation of cholesterol plaque. To improve blood flow to the popliteal graft, doctors did three things to the arteries above the graft: they performed a femoral-popliteal bypass above the knee; they performed a bypass from the femoral artery in the right leg to the femoral artery in the left leg; and they put a stent in the right common iliac artery. A few years after the surgery, claimant's claim was closed and she was awarded partial permanent disability for her left leg.

In 2009, an angiogram showed that claimant had blockages or narrowing in her arteries (various parts of the left iliac artery, left femoral artery, and a right tibial artery). The right iliac stent graft and the right-to-left-femoral graft were also blocked, though the left femoral-popliteal bypass graft that had replaced the injured portion of the popliteal artery was open. At the time, claimant was experiencing claudication in the left lower leg—a cramping, often during activity, caused by lack of blood circulating in the leg. The treating doctor recommended surgery to place an aorto-bifemoral bypass, a graft that originates in the abdominal aorta and has two limbs that go down and connect to the femoral artery of each leg.

After employer asserted that the proposed surgery was not causally related to the compensable injury, claimant requested administrative review before the director of the Department of Consumer and Business Services. The department issued a transfer order, under ORS 656.704(3)(b)(C), to the board for determination of whether the proposed surgery was related to the accepted conditions.

An administrative law judge (ALJ) initially considered the matter, focusing on the opinions of two doctors who described the relationship between the recommended aorto-bifemoral bypass, claimant's injury, and her arteriosclerosis. Dr. Duncan, who performed a records review on behalf of employer, explained that "[t]he underlying condition of arteriosclerosis ha[d] been present for many years" before

the 1999 injury. In Duncan's view, "the surgeries done at the time of the injury restored essentially normal circulation (as measured by the ankle blood pressure) to the left leg," and "[e]verything subsequent [to] that transpired * * * within the natural history of her disease." As of 2009, claimant's "femoral to femoral bypass ha[d] occluded and she * * * had a progression of the iliac artery occlusive disease." Duncan further explained that, because of the blockages in claimant's iliac arteries, the "inflow to her lower extremity reconstructions is compromised and this will have a negative effect on the future patency [i.e., the openness] of the left lower extremity arterial reconstruction." Ultimately, Duncan explained that "[t]he disease that would be treated by the aortobifemoral bypass is the progression of her long standing, underlying arteriosclerosis and not the left leg injury."

Landry agreed with Duncan that "[t]he aorto-bifemoral bypass graft is recommended due to significant arterial disease in the iliac arteries bilaterally" and that the arterial disease is "the result of chronic atherosclerosis" rather than the work injury. But he went on to explain that "the patency of the left femoral-popliteal bypass, which was placed as a result of the injury, is dependent on adequate arterial inflow. Thus, preservation of the existing graft, which was placed as a result of the injury, is best achieved by providing better arterial inflow through an aortofemoral bypass."

In considering that evidence, the ALJ described the question at issue as whether the surgery "was for or directed to the traumatic occlusion of the left popliteal artery at [the] fracture site." The ALJ noted that the parties agreed that the first sentence of ORS 656.245(1)(a) governed the dispute because it involved an "ordinary condition," rather than a consequential or combined condition. *See SAIF v. Sprague,* 346 Or 661, 664, 217 P3d 644 (2009) (explaining that "insurers generally are responsible for medical services 'for' conditions—that is, ordinary 'conditions'—that are 'caused in material part' by compensable workplace injuries" but ORS 656.245(1)(a) "sets different standards" for preexisting, consequential, and combined conditions). Relying on Landry's and Duncan's statements that the proposed surgery would address the compromised blood flow to the femoral-popliteal graft, the ALJ determined that "a preponderance of evidence

establishe[d] that the proposed [surgery] is directed to the accepted popliteal artery injury."

Employer appealed to the board, arguing that the "condition" to be treated by the proposed aortobifemoral bypass is artery occlusive disease, which was not caused in material part by the traumatic occlusion of the left popliteal artery. After noting the parties' agreement that the claimed medical service was "'for' an 'ordinary' condition," the board set out to "determine the 'condition' to which the claimed medical service * * * relates." The board determined that "the 'condition' to which the aortobifemoral bypass relates is arteriosclerosis/atherosclerosis," which was not caused by claimant's left leg injury. While recognizing that there was also evidence that the "proposed surgery was necessary to improve and maintain the flow into the femoral-popliteal graft in the left leg," the board reasoned that no medical evidence established "that the surgery is necessary to treat the accepted condition of 'traumatic occlusion of the popliteal artery at fracture site.'" The board also observed that the popliteal "graft had stayed open and was not occluded" and that the traumatic occlusion in the popliteal artery had fully resolved after the initial surgeries. Accordingly, the board reversed the ALJ's order.

On review, the parties again base their arguments on the first sentence of ORS 656.245(1)(a). That statute provides, in part:

> "For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions caused in material part by the injury for such period as the nature of the injury or the process of the recovery requires, subject to the limitations in ORS 656.225, including such medical services as may be required after a determination of permanent disability. In addition, for consequential and combined conditions described in ORS 656.005(7), the insurer or the self-insured employer shall cause to be provided only those medical services directed to medical conditions caused in major part by the injury."

"[T]o properly analyze claimant's claim, we must determine first whether claimant has a compensable injury

and whether he sought medical services for a condition that was 'caused in material part by' that injury." *Arms v. SAIF*, 268 Or App 761, 768, 343 P3d 659 (2015). Under that framework, the parties agree that the compensable injury here was the traumatic occlusion of the left popliteal artery[1] and that the medical service sought was an aortobifemoral bypass surgery. Accordingly, there are two issues on review: (1) whether the traumatic occlusion of the popliteal artery is the material cause of a condition; and (2) whether the proposed aortobifemoral bypass is "for" that condition. *SAIF v. Swartz*, 247 Or App 515, 525, 270 P3d 335 (2011).

The parties each focus on one of those questions. Arguing that the board made a legal error in identifying the condition at issue, claimant sees the first step under ORS 656.245(1)(a) as determining the condition that was caused by the compensable injury. Claimant argues that it is undisputed that the compensable injury, the traumatic occlusion of the left popliteal artery, "is a material contributing cause of *the grafted popliteal artery*." (Emphasis added.) Working from that view of the condition, claimant argues that, because the proposed surgery is "intended to increase the vascular flow to prevent occlusion of the grafted popliteal artery," the surgery is for that condition.

Employer, on the other hand, argues that the board properly identified the one "condition" that the surgery was "for." Employer argues that there was substantial evidence that the surgery would treat the arterial occlusive disease (which employer treats as synonymous with peripheral vascular disease), and thus the board correctly

---

[1] The parties equate the "compensable injury" resulting from the 1999 work accident as the injury to the left popliteal artery, apparently on the basis that the injury to the left popliteal artery was the condition that SAIF accepted soon after the work accident. On review, the parties do not suggest that the board, in analyzing the compensability of the proposed surgery, should have taken a different view of the "compensable injury" in light of our recent decisions in *Brown v. SAIF*, 262 Or App 640, 325 P3d 834, *rev allowed*, 356 Or 397 (2014); *SAIF v. Carlos-Macias*, 262 Or App 629, 325 P3d 827 (2014); and *Easton v. SAIF*, 264 Or App 147, 331 P3d 1035 (2014). We therefore identify the compensable injury as the injury to the left popliteal artery, and, in doing so, do not mean to articulate a different legal standard for determining compensability than the standard articulated in *Brown* and the cases following it.

identified that as the condition at issue.[2] Employer acknowledges that "Landry did opine that the recommended surgery was needed to maintain the patency of the 1999 graft," but asserts nonetheless, and without further explanation, that "the 'condition' being treated by the surgery is peripheral vascular disease." Given that definition of the "condition," employer notes that Landry and Duncan agreed that the arterial disease was caused by arteriosclerosis, not the compensable injury.

We start with employer's argument. Although employer describes the primary inquiry under ORS 656.245(1)(a) as identifying the *one condition* to which the surgery relates, employer and claimant share the same understanding of the term "conditions" in that statute: Claimant identifies the condition by looking to the "purposes of the newly proposed bypass," and employer describes the condition as what the proposed surgery "is to address" or what "creat[es] the need for" the surgery. The board followed a similar path, reasoning that it had to "determine the subject of the proposed surgery" to identify "the 'condition.'" All of those descriptions are generally consistent with our explanation that, under ORS 656.245(1)(a), "the 'conditions' are the current conditions for which treatment is sought." *Swartz*, 247 Or App at 525; *see also id.* at 524 (noting that the current condition "'need not be the accepted condition'" (quoting *SAIF v. Martinez*, 219 Or App 182, 191, 182 P3d 873 (2008))).[3]

---

[2] We note that the board more particularly identified "arteriosclerosis/atherosclerosis" as the condition "to which the aortobifemoral bypass relates," but the board also endorsed statements by Landry and Duncan that the surgery would treat claimant's arterial occlusive disease.

[3] The parties do not advance—and the board did not rely on—a more specific definition of the term "conditions" in ORS 656.245(1)(a), which is not defined by statute. When considering the term "condition" in a related statute, we have observed that the "ordinary meaning" of that term is the "physical status of the body" or of a part of the body. *See Young v. Hermiston Good Samaritan*, 223 Or App 99, 105, 194 P3d 857 (2008) (explaining that "the plain, natural, and ordinary meaning of the word 'condition' is 'the physical status of the body as a whole *** or of one of its parts,'" in considering the term "medical condition" in ORS 656.267(1) (quoting *Webster's Third New Int'l Dictionary* 473 (unabridged ed 2002)). Assuming that particular definition applies here, it does not provide support for employer's view that "arterial occlusive disease" is the only condition treated by the surgery.

Given that agreed-upon understanding of the term "conditions," employer does not offer a coherent answer why the only condition to be considered here is "arterial occlusive disease" in the iliac arteries. If we think of "conditions" as what the proposed surgery is meant "to address," as employer suggests, the record shows that the surgery would treat multiple conditions. Landry explained that "[t]he aortobifemoral bypass graft is recommended due to significant arterial disease in the iliac arteries," but also explained that the bypass was recommended "in order to maintain the patency of the left leg graft, which was placed as a result of the work injury." Duncan, too, explained that "[t]he disease that would be treated by the aortobifemoral bypass is the progression of her long standing, underlying arteriosclerosis," but also offered his view that the surgery would increase inflow of blood to the "left lower extremity arterial reconstruction," and would therefore keep the popliteal graft open.

That view is consistent with ORS 656.245(1)(a), which speaks to "conditions" and does not require that particular medical services can only be "for" a single condition. Indeed, the Supreme Court has made clear that medical services may treat a medical condition even if "those services *also* provide incidental benefits or help to treat *other medical conditions* that were not caused by the compensable injury." *Sprague*, 346 Or at 675 (first emphasis in original; second emphasis added). Thus, in *Sprague*, the court concluded that the claimant's gastric bypass surgery would treat a current arthritic knee condition that was caused by an earlier compensable knee injury, even if that surgery "also treated [his] morbid obesity as a necessary incident of effectively treating his knee condition."[4] *Id.* The gastric bypass surgery treated multiple conditions—it treated claimant's obesity (a denied condition), which, in turn, helped the arthritic knee—but all that mattered in determining the insurer's responsibility for that surgery was that it treated a condition, the arthritic knee, that was caused by the compensable injury.

---

[4] In *Sprague*, "directed to" and "caused in major part by" were the relevant standards, under the second sentence of ORS 656.245(1)(a), because the arthritic knee condition was classified as a consequential condition.

As in *Sprague*, the record here shows that the proposed bypass surgery would treat multiple conditions. The surgery would resolve the blockages and narrowing in the iliac arteries (the occlusive disease in those arteries, a denied condition) and would, in turn, resolve the suboptimal flow to the popliteal graft in the left leg, which created a risk that that graft would occlude. Employer is therefore wrong to focus only on the occlusive disease in the arteries—which the parties agree was caused by arteriosclerosis, not the compensable injury—as the end of the inquiry under ORS 656.245(1)(a). To the extent that the board endorsed employer's view that the surgery must relate to a single condition under ORS 656.245(1)(a), that view was error. Even if the surgery treated the artery occlusive disease, which was not causally related to the injury, employer may still be responsible for medical services to treat the suboptimal flow to the left popliteal graft, if that condition is caused in material part by the compensable injury.

The problem for claimant is that there is no evidence in the record showing that the lack of inflow to the left popliteal graft and the associated risk of occlusion in the graft were caused, in material part, by the traumatic injury in the popliteal artery. Although the popliteal graft was placed to repair the traumatic blockage in the popliteal artery, the evidence showed that that graft fully resolved the traumatic occlusion and was open at the time of the proposed surgery. The current state of affairs—the reduction in blood flowing *to* the graft—was caused by blockages and narrowing in upstream arteries, which were the result of a buildup of plaque in those arteries (*i.e.*, arteriosclerosis). Thus, unlike in *Sprague*, where one of the conditions treated by the medical services was caused by the compensable injury, here the medical evidence shows that the surgery would treat conditions that had no causal connection to the compensable injury. For that reason, the board correctly determined "that the medical evidence is not sufficient to establish that the proposed aortobifemoral bypass is 'for conditions caused in material part by the injury.'"

That brings us to claimant's argument on review. Claimant attempts to avoid the result reached by the board by identifying the condition at issue as "the grafted popliteal

artery," noting that it is "undisputed" that the traumatic blockage of the popliteal artery caused the grafted popliteal artery, in that the surgical placement of the graft would not have occurred but for the traumatic blockage. Even if we assume that the existence of the popliteal graft is a "condition" caused by the injury,[5] the problem is with claimant's further assertion that the "proposed aortobifemoral bypass is for the grafted popliteal artery." As the board observed, the left popliteal graft did not require repair—the graft remained open as of 2009—and thus the surgery did not effect a change of that graft itself. Both doctors explained that it was the lack of "inflow" to the popliteal graft—the lack of blood coming from upstream arteries—and the corresponding risk of a blockage in that graft, that demanded treatment. Claimant recognizes as much on review, noting that the bypass operation was intended to "increase the vascular flow to prevent occlusion of the grafted popliteal artery." It follows that, even if we agree that the popliteal graft was a condition caused by the injury, substantial evidence supports the board's determination that the surgery was not *for* that condition.[6]

In sum, the board correctly determined that the proposed aortobifemoral bypass was not "for" any "conditions caused in material part by" the traumatic occlusion of the left popliteal artery. If we start by considering the "left popliteal graft" itself as the "condition" caused by the injury,

---

[5] Claimant's argument suggests that a condition is merely a part of the body—here, the graft itself—rather than the current status of a part of the body. That view conflicts with the ordinary meaning of condition and does not align with the way we and the Supreme Court have described "conditions" under ORS 656.245(1)(a). *See, e.g., Sprague,* 346 Or at 672 (condition was arthritis in the knee); *Arms,* 268 Or App at 768 (condition was degeneration of C6-7 level of spine); *Swartz,* 247 Or App at 525 (condition was ongoing low back pain); *Martinez,* 219 Or App at 184-85 (condition was death of bone tissue in knee).

[6] Claimant does not argue that the lack of flow to the popliteal graft is a consequential condition, meaning that the current condition is a consequence of the various surgical procedures performed in 1999, which was a consequence of the compensable 1999 injury. *See, e.g., Sprague,* 346 Or at 672 (classifying the claimant's current condition, an arthritic knee, as a "consequential condition" because the medical evidence showed that the claimant's arthritic knee was a consequence of a surgery on the knee to repair a torn meniscus, which in turn was performed as a consequence of a compensable injury, the torn meniscus). Accordingly, we do not consider any possible causal link between the lack of flow to the popliteal graft and the surgical procedures performed in 1999.

as claimant proposes, the record shows that the bypass surgery did not address any defect in that graft. And if we start by considering what the surgery was for, as employer advocates, the record shows that the bypass surgery would treat the blockages in the iliac arteries and improve inflow to the popliteal graft in the left leg, but neither of those conditions was caused in material part by the traumatic occlusion of the popliteal artery.

Affirmed.