Argued and submitted October 3, 2011, reversed and remanded February 8, 2012

In the Matter of the Compensation of
Brian A. Velazquez, Claimant.
MENTOR GRAPHICS CORP.,
*Petitioner,*

*v.*

Brian A. VELAZQUEZ,
*Respondent.*

Workers' Compensation Board
0900085; A145985

273 P3d 188

Jerald P. Keene argued the cause for petitioner. With him on the briefs was Oregon Workers' Compensation Institute, LLC.

Spencer D. Kelly argued the cause for respondent. With him on the brief was Welch, Bruun & Green.

Before Ortega, Presiding Judge, and Brewer, Chief Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

Claimant filed a claim for workers' compensation benefits, asserting that he had a compensable occupational disease in his hands, arms, and shoulders caused by his work as a computer network engineer. Employer denied the claim, asserting, among other things, that claimant's work was not the major contributing cause of the claimed disease. The Workers' Compensation Board set aside the denial after finding that claimant had been diagnosed with "chronic muscular tension pain" that was caused by long hours of computer work. Employer seeks judicial review. It argues that the board failed to address whether claimant proved the existence of a disease caused by work, as opposed to proving merely that work caused symptoms of some underlying disease, and failed to make findings necessary to establish the existence of an occupational disease. We are unable to determine from the board's order whether it found that claimant proved the existence of an occupational disease, not just symptoms. We therefore remand to the board so it may address that point.

The pertinent facts are not in dispute. Over the course of several years, claimant was examined by a number of doctors, including Dr. Graham, who conducted an independent medical evaluation (IME) at employer's request. Graham reviewed claimant's medical history and conducted a physical examination, which included a number of diagnostic tests. All of the test results were normal. In a November 2008 IME report, Graham stated that the examination had revealed "no evidence of any objective findings of abnormality." Nevertheless, based on claimant's medical history, Graham diagnosed "[c]hronic muscular tension pain, bilateral forearms and trapezii, secondary to chronic work exposure." Graham stated that claimant's "symptoms of chronic forearm and trapezial pain are related to chronic muscular tension in the forearms as a result of chronic and prolonged keyboard computer work." He went on to reiterate, "In my opinion, the etiology of the condition is the prolonged exposure to long hours of repetitive keyboarding and computer mouse work," that claimant's "current condition is due in whole to the worker's job duties," and that claimant's job

duties were "the major contributing cause of the present complaints and diagnosis." Graham was asked to provide the equivalent "ICD-9-CM" code[1] for his diagnosis. He stated, I believe the closest I can come would be either musculoneuralgia (729.1) or overexertion (994.5)." (Internal quotation marks omitted.)

After Graham made his IME report, employer's attorney spoke with him about claimant's case. She later sent Graham a letter summarizing their discussion and asking Graham to sign it if it accurately reflected his opinion. Among other things, the letter stated that Graham had "found no objective findings of a diagnosable condition at the time of [his] examination" and that, although he had "used the words 'musculoneuralgia' and 'overexertion' in [his] report, they are descriptive terms and not diagnoses." Graham signed the letter in February 2009. At least two other doctors who examined claimant reported that they could not determine that claimant's job duties caused the condition underlying his symptoms.

Employer denied claimant's workers' compensation claim on the grounds that work activities were not the major contributing cause of a disease and that there was a lack of objective findings.[2] Following a hearing, the administrative law judge (ALJ) set aside employer's denial. The board affirmed the ALJ's order, relying primarily on Graham's report. It found that Graham had diagnosed claimant with "[c]hronic muscular tension pain, bilateral forearms and trapezii, secondary to work exposure" and had attributed that "condition" to his long hours of computer work.

Employer seeks judicial review, arguing that substantial reason does not support the board's conclusion that claimant proved the existence of a disease that was caused by work. Claimant responds that this is merely a "substantial

---

[1] "ICD-9-CM" stands for "International Classification of Diseases, Ninth Revision, Clinical Modification," which is the "official system of assigning codes to diagnoses and procedures associated with hospital utilization in the United States." National Center for Health Statistics, *Classification of Diseases, Functioning, and Disability*, http://www.cdc.gov/nchs/icd/icd9cm.htm (last updated Sept 23, 2011).

[2] Employer also contended that the claim was untimely. That issue was resolved in claimant's favor and is not at issue on judicial review.

evidence" case. He contends that at least three of the doctors who examined him, including Graham, opined that claimant had a condition that was caused by his work activities. Thus, he argues, substantial evidence supports the board's conclusion.

ORS 656.802 governs occupational disease claims under the Workers' Compensation Law and provides, in part:

"(1)(a) As used in this chapter, 'occupational disease' means any disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death * * *[.]

"* * * * *

"(2)(a) The worker must prove that employment conditions were the major contributing cause of *the disease*."

(Emphasis added.)

The word "disease" in ORS 656.802 is significant, and is not synonymous with "symptoms." *See generally Young v. Hermiston Good Samaritan*, 223 Or App 99, 104-06, 194 P3d 857 (2008) (explaining distinction between "conditions"—including diseases—and "symptoms"). Consequently, proof that a claimant's work caused his or her symptoms does not by itself suffice to prove that work caused a disease, unless medical evidence establishes that the symptoms themselves are the disease. *Georgia-Pacific Corp. v. Warren*, 103 Or App 275, 278, 796 P2d 1246 (1990), *rev den*, 311 Or 60 (1991) (citing *Weller v. Union Carbide Corp.*, 288 Or 27, 33, 602 P2d 259 (1979)). Whether something is a disease or a symptom is a question of fact that must be resolved based on medical evidence. *Cf. Young*, 223 Or App at 107 (applying that standard to the distinction between "conditions" and "symptoms").

As we understand it, employer's position is that the board's order is insufficient because the board did not make findings as to what Graham meant by the word "condition" when he reported that claimant's condition was "due in

whole" to his job duties. Employer seizes on Graham's acknowledgment that he used the words musculoneuralgia" and "overexertion" as "descriptive terms and not diagnoses." Employer infers that Graham intended *all* of his "diagnoses" only as descriptions of claimant's symptoms, and it concludes, therefore, that all of Graham's references to claimant's "condition" related only to symptoms—not to a disease. Nonetheless, employer acknowledges the possibility that some evidence in the record might support a finding that claimant suffered from an occupational disease. Employer therefore does not argue that the board's order lacks substantial evidence. Rather, employer contends that the order does not adequately *explain* whether claimant's work caused a compensable disease *condition*," as opposed to only "prompt[ing] a symptomatic response from an unidentified underlying condition." (Emphasis in original.) Consequently, employer concludes, the order lacks substantial reason.

In short, employer does not contend that its view of the facts is the only view supported by substantial evidence—that is, the only view that the board could have adopted. Rather, it argues that the board did not adequately address either the distinction between diseases and symptoms or that distinction's significance to the occupational disease determination.

We cannot tell from the board's order whether it considered the distinction that employer highlights. The board's conclusion that "Dr. Graham's persuasive opinion" establishes "a compensable upper extremity condition" is susceptible to more than one interpretation. On one hand, the order easily may be read to suggest that the board understood Graham's report merely to opine that claimant's symptoms were attributable to his work, and it nonetheless concluded—erroneously—that the link between symptoms and work activities was sufficient to establish that claimant had an occupational disease. That reading is plausible given Graham's February 2009 explanation that he had used the terms "musculoneuralgia" and "overexertion" in his November 2008 report only in a descriptive sense, not as diagnoses. On the other hand, the order also leaves open the possibility that the board inferred something different from Graham's opinion: that, despite his later disclaimers, his initial references to

claimant's "condition" still related to a disease—diagnosed or otherwise. If the board did draw that inference, it needs to say so, and it needs to explain how Graham's report supports that inference. *See City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 271, 639 P2d 90 (1981) (as part of their review for substantial evidence and reason, courts review agency orders "for the existence of a rationale," *i.e.*, "whether there is a basis in reason connecting the inference to the facts from which it is derived").

We recognize that the board's report acknowledges Graham's February 2009 letter, stating that Graham "at one point agreed 'that he found no objective findings of a diagnosable condition' and that 'musculoneuralgia' and 'overexertion' were 'descriptive terms and not diagnoses.' " The board explained away those statements by asserting that "the determination of whether 'objective findings' are present is a legal issue, so a physician's opinion that no objective findings are present is not controlling if findings satisfying the statutory definition are nevertheless present." That explanation misses the point. As employer notes, it did not dispute the existence of "objective findings," which are statutorily defined as "verifiable indications of injury or disease," during the board review process. ORS 656.005(19). In other words, employer did not then (and does not now) contend that claimant's symptoms are so irreproducible, incapable of measurement, or unobservable that they do not qualify as "objective findings." The question, however, is not whether claimant's symptoms are capable of objective and verifiable observation—the record supports the Board's conclusion that they are—but whether those "verifiable indications" led Graham to conclude that claimant had a *disease* caused by work, as opposed only to symptoms. *See* ORS 656.802(2)(d) (objective findings must support medical evidence that establishes the existence of an occupational disease). The board did not make findings on that issue. We remand so the board may (1) make findings about whether Graham or other physicians who examined claimant determined that he had a disease caused by his work, not merely symptoms, and (2) provide and explain an ultimate conclusion about whether claimant met his burden of proving that he suffered an occupational disease.

Reversed and remanded.