Argued and submitted September 18, 1989, reversed and remanded for reconsideration February 21, 1990

In the Matter of the Compensation of
Robert D. Armstrong, Claimant.

ASTEN-HILL COMPANY et al,
*Petitioners,*

*v.*

ARMSTRONG,
*Respondent.*

(WCB No. 86-02776; CA A51176)

787 P2d 890

Paul L. Roess, Portland, argued the cause for petitioners. With him on the brief was Acker, Underwood, Norwood & Hiefield, Portland.

Arthur P. Klosterman, Salem, argued the cause for

respondent. With him on the brief was The Law Offices of Brian R. Whitehead, Salem.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

Employer seeks review of an order of the Workers' Compensation Board affirming the referee's decision that claimant's chronic rhinitis condition was worsened by his working environment and is, therefore, compensable. Reviewing for substantial evidence, we reverse and remand. ORS 656.298(6); ORS 183.482(8).

Claimant worked for employer as a weaver for seven years. He was exposed to dust and fibers from the milling of asbestos, cotton, fiberglass and acrylic materials. Employer no longer uses asbestos and cotton fibers, but 20 to 50 percent of the material presently used is fiberglass or acrylic, and particles are released into the air from those substances.

Claimant has a history of hay fever, allergic rhinitis, pneumonia and bronchitis. He is allergic to house dust and has an increased tendency to catch colds and flu, because his children bring home viruses. He rides a bicycle in cold weather, and that aggravates his symptoms. His home is drafty and, during the winter, its average temperature is 60 degrees. He heats the house with firewood and cuts the wood himself. He once cut firewood for commercial sale for approximately 4 months but quit on his doctor's advice. He suffers from chronic rhinitis, an inflammation of the nasal mucosa characterized by post nasal drainage, sneezing, nasal itching and nasal congestion.

Claimant last worked for employer in December, 1985. In January, 1986, he took a 30-day medical leave of absence. On January 24, 1986, he filed a claim for compensation for nosebleeds and headaches, alleging that those symptoms were caused by the working conditions. Employer denied the claim. Claimant requested a hearing on the compensability of the nosebleeds only. The referee found that the work environment had worsened the rhinitis. The Board reversed. On review, we remanded because, under recent amendments to the Workers' Compensation Law, its order was inadequate for our review. *Armstrong v. Asten-Hill Co.,* 90 Or App 200, 752 P2d 312 (1988). On remand the Board found the claim compensable.

At issue is whether claimant's rhinitis worsened in late 1985 and early 1986 and, if so, whether his work exposure

was the major contributing cause. *Devereaux v. North Pacific Ins. Co.*, 74 Or App 388, 391, 703 P2d 1204, *rev den* 300 Or 162 (1985). The medical evidence was in conflict as to whether an aggravation of symptoms, *i.e.*, nosebleeds, increased congestion and nasal drainage, reflected a worsening of the underlying disease. A worsening of symptoms alone is not compensable. *Stupfel v. Edward Hines Lumber Co.*, 288 Or 39, 602 P2d 264 (1979).

■    The Board relied on expert opinions from Dr. Parosa and Dr. Montanaro. Parosa stated that an increase in symptoms results from a pathological change in the nasal tissue and is symptomatic of a worsening of the underlying condition. Montanaro stated that day to day symptomatic changes may mean that there have been physiological changes but does not reflect a change in the underlying disease process. The Board, however, read his testimony as saying that the disease process has worsened.[1] Having read both experts' testimony to say that both agreed, it concluded that the condition had worsened. The Board also concluded, partly on the basis of its characterization of Montanaro's testimony, that the working conditions were the major cause of the worsening.

The Board substantially misstated Montanaro's testimony.[2] The only reasonable reading is that he said that it

---

[1] The Board stated:

"* * * His testimony regarding the correlation between an increase in symptoms and a worsening of the underlying condition is ambiguous. Early in his testimony he stated:

" 'Well, I feel that . . . irritant exposures, either in the workplace or away from the workplace, may result in a significant worsening of — of symptoms. Symptoms do not imply that there are underlying *significant* pathologic changes. We have individuals who have runny noses, sneezing, who, if you go in and look at them have *very little* in the way of pathologic changes. If you biopsy that tissue, it would not show any *significant* pathologic changes.' (Emphasis added [by the Board]).

"Later in his testimony, Dr. Montanaro opined 'that a change in a physiologic condition from minute to minute or day to day may not result in a *long term* change in a disease or a condition. . . .' (Emphasis added [by the Board]).

"* * * * *

"We conclude, however, based upon the foregoing, that Dr. Montanaro was of the opinion claimant did suffer a worsening of his condition albeit a worsening that was neither 'significant' nor 'long term.' "

[2] Montanaro also testified:

"I think that—that the [work] environment itself was not a high risk

was clear that only claimant's symptoms, not the underlying, pre-existing condition, had worsened. Because of that misstatement, we cannot say whether there is substantial evidence to support the Board's conclusion on compensability. *See Armstrong v. Asten-Hill Co., supra,* 90 Or App at 206. Because we cannot know what the Board would have concluded about claimant's condition if it had not misread Montanaro's testimony unreasonably, we must again remand for reconsideration.

Reversed and remanded for reconsideration.

---

involve—environment leading to any further material worsening of * * * that underlying condition * * *.

"* * * * *

"I feel a condition is—that a condition, as we use it in this arena, is a pathologic event, a disease process, if you will. I feel an individual may have symptoms in which you can see physiologic alterations in which a disease process or a pathologic process has not taken place.

"* * * * *

"Q.  Okay, now, I note on page five of your report you said that 'the exposure at Asten-Hill resulted [in] only a temporary aggravation of symptoms and would not be related to his present condition.'

"A.  That's correct."