Argued and submitted April 1, affirmed October 15, 2008

In the Matter of the Compensation of
Kristi R. Young, Claimant.

Kristi R. YOUNG,
*Petitioner,*

*v.*

HERMISTON GOOD SAMARITAN,
*Respondent.*

Workers' Compensation Board
0600370, 0507846; A134462

194 P3d 857

R. Adian Martin argued the cause for petitioner. With her on the briefs was Ransom, Gilbertson, Martin & Ratliff, LLP.

Courtney C. Kreutz argued the cause for respondent. On the brief were Brian M. Solodky and Radler, Bohy, Replogle & Miller, L.L.P.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Claimant seeks review of an order of the Workers' Compensation Board upholding employer's denial of her new or omitted medical condition claim for radiculopathy. The board issued its order after determining, based on medical evidence, that "radiculopathy" is merely a symptom and not a medical condition. Claimant asserts, additionally, that the board erred in upholding employer's denial of her current combined condition. We conclude that the board did not err with respect to either claim and affirm.

The relevant facts are uncontested. Claimant worked for employer as an aide in an assisted care/nursing facility. On June 16, 2005, she suffered a compensable injury to her lower back when she moved a patient. Her symptoms included pain in the back and numbness and pain down her right leg to the toes. The diagnoses after examination were lumbar spine injury/strain and "right lumbar radiculopathy vs sciatica." Claimant had an MRI, which revealed mild degenerative changes in the lumbar and thoracic areas, with a mild to moderate circumferential bulge of the annulus at L5-S1. Claimant's symptoms gradually improved with physical therapy and medication, and, on August 1, 2005, her treating physician, Dr. Flaiz, released her to half-time work with restrictions in lifting and bending. In August 2005, employer accepted a claim for lumbar strain.

By September 1, 2005, Flaiz noted that claimant was 90 percent improved. Claimant, however, continued to experience pain and numbness down her right leg and into her foot. On October 7, 2005, she requested acceptance of lumbar radiculopathy as a new or omitted medical condition. She continued to receive treatment, including epidural steroid injections for back pain and radiculopathy.

In November 2005, claimant underwent an insurer-arranged medical evaluation (IME) with Dr. Gillespie, an orthopedic surgeon, and Dr. Vincent, a neurosurgeon. The doctors opined that claimant's symptoms of radiculopathy were not supported by objective findings. They explained that lumbar radiculopathy is pain that radiates along the course of a nerve root that exits from the spine. Gillespie and

Vincent opined that "radiculopathy" is a description of symptoms and not a distinct medical condition. Gillespie and Vincent opined that the major contributing cause of any radiculopathy that claimant might have been experiencing was not her work injury, but obesity, lordosis, ligamentous laxity, and poor conditioning. Flaiz concurred in Gillespie's and Vincent's opinions and further opined that claimant's lumbar strain combined with preexisting degenerative arthritis, obesity, and deconditioning to cause or prolong claimant's lower back symptoms.

Claimant was also evaluated by Dr. Crum, a chiropractor. In Crum's opinion, claimant's diagnosis includes neuralgia of the sciatic nerve and myofascial back pain from one of several different peripheral entrapment sites. He was unsure whether there was nerve root irritation in the lumbar region, but opined that, even in the absence of MRI findings showing a physical entrapment, there might be an inflammatory process irritating the nerve.

Dr. Hajjar, a neurosurgeon, examined claimant and concluded that claimant has right L5 radiculopathy, but that she also suffers from two preexisting conditions, spondylolysis at L5 and spondylolisthesis at L5-S1, that are the major contributing causes of her radiculopathy.

On December 1, 2005, employer denied claimant's new or omitted condition claim for lumbar radiculopathy, explaining that the medical evidence suggested that radiculopathy is a description of symptoms rather than a medical condition. On January 5, 2006, employer amended its notice of acceptance to include a lumbar strain combined with preexisting, noncompensable degenerative changes. On January 6, 2006, employer denied claimant's current condition and need for treatment, explaining that the disability and need for treatment are due in major part to preexisting noncompensable degenerative disc disease, arthritis, obesity, and deconditioning. Claimant requested a hearing on both denials.

At the hearing and before the board, employer argued that claimant's claim for radiculopathy is not compensable. According to employer, under ORS 656.267(1), to begin the processing of a new or omitted medical condition

claim, "the worker must clearly request formal written acceptance of a new medical condition or an omitted medical condition from the insurer or the self-insured employer." In this case, employer argued, claimant's radiculopathy is not compensable because it is merely a symptom and not a "medical condition" within the meaning of the statute.

The board agreed with employer's contention that, under ORS 656.267(1), symptoms do not qualify as "medical conditions" for purposes of the new or omitted medical condition claim. Reasoning that it is a medical question whether radiculopathy is a "condition" or a "symptom," the board relied on the opinions of Gillespie and Vincent to conclude that radiculopathy is not a distinct medical condition, but rather a term used to describe the nature and location of a patient's symptoms. Explaining that an insurer is not required to formally accept the symptoms of a condition, the board upheld employer's denial of claimant's radiculopathy. It therefore did not reach the question whether the radiculopathy, if it exists, is caused in major part by claimant's injury. The board also upheld employer's denial of claimant's current combined condition, concluding that claimant's otherwise compensable injury was no longer the major contributing cause of her combined condition.

Claimant seeks review, asserting that the board erred in upholding both denials. Claimant's first two assignments of error address the board's rejection of her new or omitted condition claim. Claimant asserts that the board erred in essentially treating the meaning of the statutory term "medical condition" as a question of medical evidence, contrary to *Karjalainen v. Curtis Johnston & Pennywise, Inc.*, 208 Or App 674, 146 P3d 336 (2006), *rev den*, 342 Or 473 (2007). In her third assignment of error, claimant contends that the board erred in finding her evidence as to compensability of the current combined condition unpersuasive.

Employer responds that the board did not treat the *meaning* of the statutory term as one of medical evidence. According to employer, the board clearly treated the distinction between a noncompensable symptom and a compensable medical condition as one of statutory construction, and properly treated the question whether claimant's radiculopathy,

in fact, was one or the other as a question of medical evidence. As for the question of causation, employer contends that the board's evaluation of the record is supported by substantial evidence.

■   We begin with claimant's contention that, contrary to *Karjalainen*, the board improperly delegated a question of statutory construction to medical experts. In *Karjalainen*, the board concluded that the meaning of the term "arthritis or an arthritic condition" as used in ORS 656.005(24)(a)(A) presented a medical question to be determined by expert medical testimony. We reversed, explaining that "[i]n no event is the *meaning* of a statutory term determined as a question of fact." 208 Or App at 681 (emphasis in original).

This case is not quite like *Karjalainen*, however. While, in *Karjalainen*, the board erred in relying on medical evidence to define a statutory term, in this case, the board itself first defined the relevant term "medical condition" and then evaluated medical evidence to determine whether it was sufficient to establish that, in fact, what claimant presented qualified as such a condition. Specifically, the board drew a legal distinction between a noncompensable "symptom" and a compensable "medical condition," a distinction that the board drew in a prior case, *Raymond A. Graves*, 50 Van Natta 1520, 1522, *aff'd without opinion, Graves v. Thomas H. Ireland, Inc., et al*, 166 Or App 551, 4 P3d 774 (2000), *rev den*, 332 Or 56 (2001):

> "The term 'condition' is not defined by statute. In the medical context, however, the term 'condition' is defined as 'the physical status of the body as a whole or one of its parts.' *Webster's Third New International Dictionary* 473 (unabridged ed 1993). We therefore conclude that, to qualify as a claim for a 'condition' that must be processed with either ORS 656.262(6)(d) or ORS 656.262(7)(a), the claim must be for a 'physical status' of the body or one of its parts."

Following *Graves*, the board routinely adhered to the distinction between "symptoms" and "conditions." *See, e.g., John J. O'Brien*, 58 Van Natta 2714 (2006); *Richard L. Wilson*, 56 Van Natta 407 (2004); *Steven J. Clum*, 51 Van Natta 1017 (1999). And, in this case as well, the board did so, expressly citing its prior decisions.

The question, then, is whether the distinction that the board drew between noncompensable "symptoms" and compensable "medical conditions" as that term is employed in ORS 656.267(1) is correct. Claimant contends that it is not correct, while employer contends that it is. We agree with employer.

Conveniently, the parties have done much of the work for us. They agree that the term "medical condition" as used in ORS 656.267(1) is inexact and that its meaning is a question of law for the court. *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 353, 15 P3d 29 (2000). The parties also agree that "condition" is a word of common usage that should be given its plain, natural, and ordinary meaning. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). They also happen to agree that the plain, natural, and ordinary meaning of the word "condition" is "the physical status of the body as a whole * * * or of one of its parts," *Webster's Third New Int'l Dictionary* 473 (unabridged ed 2002) (defining "condition"). The point in contention is whether that definition encompasses "symptoms."

In the realm of workers' compensation law, there are several contexts in which distinctions are made between symptoms and conditions. The dichotomy is noted most commonly in the context of aggravation claims. In *SAIF v. Walker*, 330 Or 102, 109, 996 P2d 979 (2000), the Supreme Court said that, "[a]s used in the Workers' Compensation Law, the term 'condition' is not the same as the symptoms that relate to the underlying condition."[1] In interpreting ORS 656.273(1) (1995), the court concluded that, "to prove an aggravation claim, a worker must present evidence of a worsening of the compensable condition *itself*, not merely a worsening of the symptoms related to the underlying condition." *Id.* at 110 (emphasis in original). The court was careful to note that it is possible to infer the existence of a worsened condition from evidence of a symptomatic worsening. *Id.* at

---

[1] The court noted that ORS 656.214, relating to permanent disability, draws a distinction between a condition and its symptoms. ORS 656.214(6) ("All permanent disability contemplates future waxing and waning of symptoms of the condition.").

116. ORS 656.273(8) (2008) now provides that a worker seeking to establish an aggravation of an injury or disease for which permanent disability has been awarded "must establish that the worsening is more than waxing and waning of symptoms of the condition contemplated by the previous permanent disability award."

The statutory definition of "preexisting condition" also draws a distinction between a condition and its symptoms. ORS 656.005(24)(a) provides, in part:

" 'Preexisting condition' means, for all industrial injury claims, any injury, disease, congenital abnormality, personality disorder or similar condition that contributes to disability or need for treatment, provided that:

"(A)   Except for claims in which a preexisting condition is arthritis or an arthritic condition, the worker has been diagnosed with such condition, or has obtained medical services for the symptoms of the condition regardless of diagnosis[.]"

In *White v. The Boldt Company*, 212 Or App 59, 64, 157 P3d 272 (2007), we said that the question whether a claimant's condition is "preexisting," for purposes of ORS 656.005(24)(a), is not dependent on a preinjury history of symptoms but, rather, on whether the claimant has been diagnosed with the condition, or received medical services for the symptoms of the condition, before the date of the injury.

Statutory provisions regarding medical benefits also draw distinctions between a compensable condition and its symptoms. Under ORS 656.245, after the worker has become medically stationary, medical services continue to be available for "[c]urative care provided to a worker to stabilize a temporary and acute waxing and waning of symptoms of the worker's condition." ORS 656.245(1)(c)(L). There are other contexts in which the distinctions between symptoms and conditions are significant. *See Georgia-Pacific v. Piwowar*, 305 Or 494, 753 P2d 948 (1988) (employer's acceptance of symptoms is acceptance of any conditions causing symptoms); *Smirnoff v. SAIF*, 188 Or App 438, 72 P3d 118 (2003) (drawing distinction between symptoms and condition for purpose of determining whether onset of a compensable condition was sudden or gradual).

ORS 656.267(1) explicitly requires that a claimant seeking benefits for a new or omitted condition "clearly request formal written acceptance of a new medical condition or an omitted medical condition." Thus, a new or omitted medical condition claim must be for a condition. In light of the context provided by the body of workers' compensation law, we conclude that a condition and its symptoms are usually distinct.

■ The question then becomes whether claimant established that hers is a claim for a medical "condition," as the board correctly defined it. That is a question of fact, the resolution of which depends on the medical evidence. We review the board's evaluation of that medical evidence for substantial evidence. ORS 183.482(8); ORS 656.298(7). In this case, we conclude that substantial evidence does, in fact, support the board's finding that claimant's radiculopathy is a symptom and not a condition.

■ That leaves the question whether the board erred in finding unpersuasive claimant's medical evidence on the compensability of the current combined condition. That, too, is a matter that we review for substantial evidence, and we conclude that the record provides such substantial evidence to support the board's findings.

Affirmed.