Argued and submitted February 7, affirmed December 26, 2013

In the Matter of the Compensation of
David D. Walker, Claimant.

SAIF CORPORATION
and Quantum Resource Recovery,
*Petitioners,*

*v.*

David D. WALKER,
*Respondent.*

Workers' Compensation Board
0904014, 0902172, 0902171, 0902170;
A150552

317 P3d 384

David L. Runner argued the cause and filed the briefs for petitioners.

Jodie Phillips Polich argued the cause for respondent. With her on the brief was Law Offices of Jodie Anne Phillips Polich, P.C.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

In this workers' compensation case, SAIF Corporation (SAIF) and employer Quantum Resource Recovery (Quantum) seek judicial review of an order of the Workers' Compensation Board (board), which determined that the worsening of claimant's preexisting L4-5 disc herniation was a "consequential condition" under ORS 656.005(7)(a)(A) because a compensable injury to claimant's left foot was "the major contributing cause" of that condition.[1] *See* ORS 656.005(7)(a)(A) ("No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition."). On review, SAIF initially argues that, because the disc herniation preceded the foot injury by at least two years, it is not "legally or logically possible" that the disc herniation was a consequence of the foot injury that followed it. SAIF further contends, alternatively, that there is not substantial medical evidence to support a finding of an actual *worsening* of claimant's L4-5 herniation as a consequence of the foot injury, but only evidence of a "symptomatic aggravation" of that condition. We review the board's order for substantial evidence and errors of law, ORS 656.298(7); ORS 183.482(8), and for the reasons below, we conclude that substantial evidence supports the board's determination that the worsening of claimant's L4-5 disc herniation was a consequential condition of the 2008 foot injury. Accordingly, we affirm.

In 2004, before beginning work with Quantum, claimant fell out of a truck and struck his lower back while working in Arizona. He reported lower back pain and occasional tingling in his right thigh. In May 2006, claimant underwent an MRI scan of the lumbar spine. The MRI revealed a 4-to-5-mm L4-5 disc protrusion, which had a slight mass effect on the right L5 nerve root.

In October 2006, while working for Quantum, claimant heard a "pop" and experienced lower back pain as he was pushing heavy barrels. Thereafter, claimant had pain and tenderness in his right lower back and some numbness

---

[1] For ease of reference, we refer to petitioners collectively as SAIF.

and tingling down his left leg, and he underwent a second lumbar MRI scan in November 2006. That scan showed that the L4-5 disc protrusion had "increased noticeably because of extruded disc material," as compared to the earlier MRI, and that there was mass effect on both the L5 and the S1 nerve root sleeves.

SAIF accepted the October 2006 injury as a lumbar strain. Claimant received treatment for that injury over the next year and by October 2007 was determined to be medically stationary. In November 2007, the claim for lumbar strain was closed with no award of permanent impairment. In February 2008, claimant wrote to SAIF, asking it to add a "worsening * * * of L4 and L5 disc protrusion" to his claim. SAIF denied that request, relying on an April 2008 opinion from Dr. Bergquist that the October 2006 injury was not a material cause of the disability or need for treatment of claimant's disc herniation. Claimant did not pursue review of that denial, and it became final by operation of law.

In August 2008, while working at Quantum, a pallet jack fell onto claimant's left foot. SAIF accepted a left foot crush injury. A few months later, during treatment with Dr. Thomas, claimant reported severe back pain, a limited range of motion in his lower back, and right leg pain with radiculopathy.[2] In early November 2008, claimant underwent a third MRI. The reviewing radiologist reported that the disc material at the L4-5 level was still protruding into the spinal canal, but there was no "significant interval change in its size or contours" as compared to the second 2006 MRI.

Dr. Wayson saw claimant in December 2008. Wayson noted that claimant had an injury in October 2006 with back pain and right leg pain. Wayson further noted that, following claimant's August 2008 left foot injury, he was compensating for his left foot, which "led to an aggravation of his right leg symptoms and he has become progressively uncomfortable." Wayson's assessment was of "lumbar radiculopathy

---

[2] Radiculopathy or radiculitis "is a generalized term that most commonly refers to pain or numbness and can encompass a variety of underlying conditions." *Armenta v. PCC Structural, Inc.*, 253 Or App 682, 692 n 7, 292 P3d 573 (2012).

secondary to a disc herniation." After seeing Wayson, claimant sent a letter to SAIF requesting acceptance of "[l]umbar disc herniation, L4-5" and "[l]umbar radiculitis secondary to #1" as new or omitted medical conditions. The letter further stated that claimant's "file indicates that according to some of the medical evidence [he] may have a preexisting condition in his lower back. If appropriate please process this request as a worsening of the above referenced conditions."

In January 2009, Dr. Carr performed an independent medical evaluation. Carr noted that, before claimant's October 2006 back injury, he had degenerative disc disease at L4-5. In Carr's view, following the October 2006 back injury, claimant suffered a "definite pathological worsening of the disc protrusion" and "radicular symptoms which would be called radiculitis which in [his] opinion were secondary to the worsening of the disc herniation at L4-5." Carr believed that the 2006 injury "was the major contributing cause of the disability and need for treatment following the combined condition" but the October 2006 back injury "ceased to be the major contributing cause of disability and need for treatment at the time [claimant] was declared medically stationary."

As to the 2008 foot injury, Carr believed that it combined with the preexisting disc condition to cause the resulting need for treatment of the lower back. In Carr's view, the altered gait due to the foot injury "alter[ed] the stresses on the back" and "produce[d] symptomatic aggravation of the degenerative disc disease." Carr believed that the 2008 foot injury "and its sequela was a *material* contributing cause of [claimant's] disability and need for treatment for his low back following the work incident[,]" but he did not believe that the foot injury was the *major* contributing cause of the disability and need for treatment resulting from the combined condition. (Emphasis added.) Rather, Carr believed that the preexisting disc condition—not the 2008 foot injury—was the major contributing cause of the disability and the need for treatment.

In February 2009, Wayson wrote to claimant's counsel that, "[f]or the most part [he] agree[d] with Dr. Carr's assessment * * *." Specifically, Wayson

"believe[d] that [claimant's] primary injury is the work injury of October of 2006 in which he suffered a progression of his disc herniation at L4-5. I think that that is the underlying and the primary cause for his need for treatment.

"He has remained symptomatic since that [time] and the foot injury [of] 2008 has led to an exacerbation, but the primary underlying cause is the disc herniation of 2006.

"Therefore, I disagree with Dr. Carr's conclusion on page 16 that 'it is not the continuing and major contributing cause to his current disability.' I do believe that the underlying disc herniation is and continues to be symptomatic."

Later in February 2009, SAIF denied the conditions for "L4-5 disc herniation" and "L4-5 radiculitis." SAIF amended that denial in June 2009, stating that, with respect to the October 2006 injury, the April 2008 denial of the disc herniation was final and claimant's L4-5 radiculitis was "a product of the previously denied L4-5 disc herniation."

In August 2009, Wayson signed a concurrence letter prepared by claimant's counsel after a conference between them. That letter explained that Wayson had the opportunity to review a "formal exhibit pack," including the MRIs from 2006, and that he agreed that "the major contributing cause, more than 50.1%, of [claimant's] current low back condition, diagnosed as an L4-5 disc herniation with radiculopathy/radiculitis, is his August 21, 2008 injury where he sustained a crush injury to his left foot." Wayson further agreed that,

"as a result of the crush injury to his left foot [claimant] altered his gait by increasing use and weight bearing on his right leg. As a result of his altered gait due to the crush injury to his left foot *his low back condition has been worsened* irritating the nerves in his low back causing inflammation and increased symptoms. Your opinion is based on the history provided to you by [claimant] of increased pain after this injury, as well as your examination, including his decreased sensation in an L5-S1 distribution on the right side, giveaway weakness in his right lower extremity, and positive straight leg raise testing. In your opinion these are all verifiable and reproducible * * * findings *of an actual worsening of [claimant's] L4-5 disc herniation*. It is your opinion that the major contributing cause, more than

> 50.1% of *this worsening* is [claimant's] altered gait due to the crush injury to his left foot."

(Emphases added.) Carr responded to Wayson's opinion during a deposition in October 2009. He testified that he did not agree with Wayson that there was a pathological worsening. Carr noted that the decreased sensation and positive straight leg raising were both observed prior to the 2008 injury and that the 2008 MRI showed that the disc fragment was no larger than it was when the MRI was taken after the 2006 injury. Thomas, who had treated claimant just after his injury, signed a concurrence letter prepared by SAIF's counsel in which he agreed with Carr's conclusions regarding claimant's disc herniation.

At a hearing held in November 2010, an administrative law judge (ALJ) considered claimant's "L4-5 disc protrusion and radiculitis claims" and reasoned that, "[f]or these conditions to be compensable as consequences of [the 2008 injury,] * * * the injury [must] be the major contributing cause of these conditions." Noting that Carr "did not believe that the 2008 injury and sequela caused the disc herniation, or did anything more than cause a symptomatic aggravation of the L4-5 condition and radiculitis," the ALJ reasoned that whether "the L4-5 disc protrusion and radiculitis is compensably related to the work injury depends on the persuasiveness of Dr. Wayson's opinion" that claimant's foot injury "was the major contributing cause of claimant's current low back condition * * *."

The ALJ noted that Wayson's opinion "was based on claimant's history, as well as on findings of decreased sensation, give[a]way weakness in the right lower extremity and positive straight leg raise testing." But the ALJ credited Carr's response that "give[a]way weakness is not an objective finding and not true weakness" and further noted that another doctor "had documented positive straight leg raising and decreased sensation in his pre-August 2008 * * * examinations, so these findings were not new." Further, the ALJ reasoned that "Wayson's August 7, 2009 concurrence letter reflects a change in his opinion, compared to his February 11, 2009 opinion[,]" but "Wayson did not explain in his August 7, 2009 concurrence letter why he changed

his opinion \* \* \*." For those reasons, the ALJ "[did] not find Dr. Wayson's August 7, 2009 opinion to be persuasive" and affirmed SAIF's "denial issued in the 2008 claim \* \* \*."

Claimant appealed the ALJ's decision to the board. Addressing the 2008 foot crush injury, the board reasoned that "[t]he parties do not dispute that the claimed L4-5 disc herniation should be analyzed [as] a 'consequential condition.' Therefore, claimant must prove that the accepted crush injury to the left foot was the major contributing cause of his L4-5 disc herniation with radiculitis." According to the board, Wayson's opinion that the altered gait "resulted in a worsened L4-5 herniated disc with radiculitis" established a compensable consequential condition. Although the board noted that, in August 2009, Wayson had partially agreed with Carr's opinion that the foot injury was not the major contributing cause of the worsened disc herniation, the board explained that Wayson's February 2009 opinion was consistent with his August 2009 opinion that the foot injury "exacerbat[ed] or worsen[ed] claimant's underlying L4-5 disc herniation." Further, the board noted that, before giving the later opinion, Wayson had the opportunity to review all of the then-available medical records, and his review of those additional materials was sufficient to explain his change in opinion.

As to Wayson's August 2009 opinion, the board determined that Wayson's conclusion of a "'worsened' L4-5 disc herniation" were supported by "'verifiable and reproducible'" findings that were not present before the 2008 foot injury, such as "'giveaway weakness in [the] right lower extremity' and 'increased pain' and inflammation." Finally, the board noted that Carr's opinion was "consistent" with a consequential condition in that he "agreed that the injury materially contributed to a 'symptomatic aggravation' \* \* \*." In the board's view, however, "Wayson's opinion [was] better explained and more consistent with claimant's symptoms and the overall record[.]"

Ultimately, the board reversed "[t]hat portion of the ALJ's order that upheld SAIF's denial of the L4-5 disc herniation with radiculitis as a consequence of the August 2008 work injury \* \* \*." One member of the board dissented

from that reversal. The dissenting board member, crediting Carr's opinion, disagreed that the medical evidence was sufficient to establish that the 2008 foot injury was the major contributing cause of a pathological worsening of the L4-5 disc herniation.

On judicial review, SAIF first raises a threshold issue as to what the board decided in its order. SAIF argues that the board's order requires SAIF to accept the "disc herniation in toto"—not the worsening of the disc herniation caused by the foot injury. With that view of the order, SAIF makes the straightforward argument that "a 'consequential condition' must follow the 'compensable injury' that allegedly causes it"; there is no dispute that "the L4-5 disc herniation occurred two years *before* the compensable left foot injury"; and therefore it is not "legally or logically possible" that the disc herniation was a consequence of the foot injury that followed it.

With regard to the worsening of claimant's L4-5 disc herniation, SAIF argues that "the record in this case, including Dr. Wayson's opinion, does not logically allow a lay fact-finder such as the board to find a worsening of anything other than symptoms." Relying on Carr's opinion that there was not a pathological change in the disc herniation, SAIF argues that "[t]here [was] no evidence that the disc herniation itself was made larger or otherwise worse by the 2008 left foot injury." In SAIF's view, then, the board improperly determined that the disc herniation was compensable merely because the altered gait due to the foot injury caused an increase in radiculitis and other symptoms of claimant's preexisting disc herniation.[3]

---

[3] SAIF does not dispute that the L4-5 disc herniation is a separate condition arising from the 2008 foot injury. *See Fred Meyer, Inc. v. Crompton*, 150 Or App 531, 536, 946 P2d 1171 (1997) ("[A] consequential condition is a separate condition that arises from the compensable injury, for example, when a worker suffers a compensable foot injury that results in an altered gait that, in turn, results in back strain."). Further, at no point has SAIF argued that the worsening of claimant's disc herniation must be viewed as a combined condition under ORS 656.005(7)(a)(B), rather than a consequential condition, on the theory that the foot injury combined with the preexisting disc herniation to bring about claimant's disability or need for treatment. *See* ORS 656.005(7)(a)(B) ("If an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury

In response, claimant acknowledges that the L4-5 disc herniation was diagnosed years before the foot injury, but he argues that his claim related to the foot injury "is based on a *worsening* of [that] prior L4-5 disc condition * * *." (Emphasis added.) According to claimant, "the board specifically addressed the major contributing cause of [his] L4-5 disc herniation condition, including a finding that it was worsened by his August 2008 left foot crush injury[.]" Claimant contends that substantial medical evidence supported that finding; the board relied on Wayson's opinion that the foot injury caused an altered gait that was the major contributing cause of an "actual worsening" of the L4-5 disc herniation.

As to the threshold issue of the scope of the board's order, we agree with claimant that the board, relying on Wayson's opinion, found that the *worsening* of claimant's L4-5 disc herniation was a consequential condition of the 2008 foot injury. Although the board at times referenced claimant's "L4-5 disc herniation" or "disc herniation with radiculitis" without using the term "worsening," those references must be understood in the context of the board's entire order, the parties' arguments to the board and the ALJ, and—most importantly—the medical evidence that the board reviewed. There is no question that claimant's disc herniation at L4-5 preexisted the 2008 injury, and so with respect to the relationship between the 2008 injury and the L4-5 disc herniation, the parties' oral arguments to the ALJ and their written submissions to the board focused on a worsening of the L4-5 disc herniation. Those arguments were based on the medical evidence: both Carr and Wayson believed that the 2008 injury caused a worsening of some sort. As the board's review of the evidence makes

---

is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."); *Fred Meyer, Inc. v. Evans*, 171 Or App 569, 573-74, 15 P3d 1261 (2000) (rejecting employer's argument that when a compensable injury makes a preexisting condition worse, that condition must be treated as a consequential condition rather than a combined condition and reasoning that claimant's degenerative disc disease in her neck that preexisted her injury was "not a separate condition that arose from the compensable injury; it preexisted and combined with it"). We therefore consider the worsening of the disc herniation as a consequential condition under ORS 656.005(7)(a)(A).

clear, however, the doctors disagreed as to the nature of that worsening—that is, whether claimant's altered gait gave rise to an actual worsening of his underlying L4-5 disc herniation or simply caused a symptomatic worsening with no worsening in the disc herniation itself.[4]

The remaining question for our review, then, is whether there is substantial evidence to support the board's determination that the 2008 foot injury was the major contributing cause of the worsening of claimant's L4-5 disc herniation. ORS 183.482(8)(c). Specifically, we must determine whether the board's evaluation of expert medical opinions is supported by evidence that, considering the record as a whole, would permit a reasonable person to make the findings. *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988); *SAIF v. Pepperling*, 237 Or App 79, 84-85, 238 P3d 1013 (2010) ("In reviewing the board's evaluation of [an expert's] opinion, we do not substitute our judgment for that of the board; rather, we determine whether the board's evaluation of that evidence was reasonable." (Citation omitted.)). To determine whether a particular finding is supported by substantial evidence, we "evaluate evidence against the finding as well as evidence supporting it to determine whether substantial evidence exists to support that finding."

---

[4] We also reject SAIF's argument that the board erred by failing to separately analyze claimant's request for acceptance of the L4-5 disc herniation and the radiculitis secondary to that herniation. SAIF advances that contention in support of its larger claim that the board found the disc herniation compensable solely because the 2008 injury caused an increase in radiculitis. As the board's order explains, however, Wayson found an "actual worsening of [claimant's] disc herniation" based on his examination and findings of a symptomatic worsening following the 2008 injury—not simply based on the presence of radiculitis following the 2008 injury. To the extent that SAIF separately argues that the board erred in ordering acceptance of the claimed radiculitis because claimant's radiculitis or radiculopathy was merely a symptom of the L4-5 disc herniation, SAIF did not present that argument to the board. *See Armenta v. PCC Structural, Inc.*, 253 Or App 682, 692 n 7, 292 P3d 573 (2012) (noting that "this court has openly debated [radiculopathy's] status as a 'condition,' though that is ultimately a question of fact to be decided based on the medical evidence in individual cases"); *Young v. Hermiston Good Samaritan*, 223 Or App 99, 101, 107, 194 P3d 857 (2008) (finding that "radiculopathy," defined by the medical evidence as "pain that radiates along the course of a nerve root that exits from the spine," was a "symptom and not a condition"). Moreover, any argument that radiculitis—which was claimed as "secondary to" the L4-5 disc herniation—was not properly found to be compensable fails in light of the board's conclusion that the 2008 foot injury caused an actual worsening of the L4-5 disc herniation.

*Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990). In a case involving conflicting medical evidence, "we will reverse the board 'only when the credible evidence apparently weighs overwhelmingly in favor of one finding and the [b]oard finds the other without giving a persuasive explanation.'" *SAIF v. Pruitt*, 198 Or App 253, 258, 108 P3d 586 (2005) (quoting *Armstrong*, 90 Or App at 206). Put more bluntly, "if there are doctors on both sides of a medical issue, whichever way the [b]oard finds the facts will probably have substantial evidentiary support." *Armstrong*, 90 Or App at 206.

The evidentiary support for a worsening claim generally comes in two forms: direct proof of a pathological worsening or a medical expert's opinion that worsened symptoms constitute a worsening of the underlying condition. *See SAIF v. Walker*, 330 Or 102, 118, 996 P2d 979 (2000) ("[B]ecause evidence of worsened symptoms is relevant to the question whether the compensable condition actually has worsened, and might in some cases be the best evidence regarding that fact, a physician may rely upon that kind of evidence in determining whether the compensable condition has worsened ***."); *SAIF v. January*, 166 Or App 620, 624, 998 P2d 1286 (2000) (if a medical expert's opinion establishes that the symptomatic worsening represents an actual worsening of the underlying condition, then such evidence may carry the worker's burden); *Johnson v. SAIF*, 194 Or App 689, 694, 96 P3d 830 (2004) (describing MRI results as evidence of a pathological change).[5]

Here, SAIF contends that there was no evidence that the disc herniation was made worse by the left foot injury and that "the only evidence [was] that there was no such worsening" because, in Carr's opinion, the disc fragment shown in the 2008 MRI was no larger than in the

---

[5] Both parties—and the medical experts on which they rely—speak to the worsening of the condition in this case as an "actual worsening," *i.e.*, the statutory standard for worsening in aggravation cases. ORS 656.273(1) ("A worsened condition resulting from the original injury is established by medical evidence of an actual worsening of the compensable condition supported by objective findings."). As noted, SAIF has not argued that an actual worsening of a condition cannot be viewed as a consequential condition under ORS 656.005(7)(a)(A); rather, SAIF has argued that the evidence in the record shows nothing more than a symptomatic worsening resulting from the 2008 foot injury.

2006 MRI. That argument ignores the evidence of an actual worsening that the board relied upon: Wayson concluded that, based on objective findings of giveaway weakness and increased pain and symptoms following the 2008 foot injury, claimant's underlying disc herniation at L4-5 had actually worsened. Under *Walker*, that opinion was sufficient to establish an actual worsening, and "[w]hether that opinion was persuasive was for the [b]oard to determine." *January*, 166 Or App at 624.

That Carr reached a different conclusion by focusing on the 2008 MRI results does not render Wayson's opinion without any value, so that the board's order lacks substantial evidence. As this court has recognized, evidence of an actual worsening may come in the form of evidence of a pathological worsening, such as an MRI, or in the form of expert medical opinion based on symptomatic worsening. *See Johnson*, 194 Or App at 694 (noting that claimant presented evidence of "an increase in symptoms, such as her urinary incontinence and difficulty walking" along with evidence of pathological changes such as a "build up of scar tissue" shown in an MRI). And SAIF has presented no authority for the principle that, as a matter of law or of medicine, evidence of pathological changes trumps contrary medical evidence—*i.e.*, an expert medical opinion—that worsening symptoms constitute a worsening underlying condition. Rather, SAIF presented an opinion from Carr, who viewed the MRI results as the "most important" evidence that the disc herniation had not worsened. But even as Carr focused on the MRI results to support his opinion, he did not opine that the MRI results were irrefutable and definitive evidence that claimant's L4-5 disc herniation had not worsened, without regard to contrary evidence of a symptomatic worsening.

Ultimately, the "divided medical opinion" in this case left the board "in the position of evaluating the evidence." *Dillon v. Whirlpool Corp.*, 172 Or App 484, 489, 19 P3d 951 (2001); *Bluemer v. Southland Industries*, 221 Or App 252, 260, 190 P3d 418 (2008) (rejecting claim "that the board erred in not giving more weight to the opinion of [one medical expert], who was the treating physician and who

relied on a more complete medical history" because that argument merely suggested that the board erred in weighing the evidence). As the board recognized, Carr's and Wayson's disagreement was based on a fine distinction between a worsening of symptoms and a worsening of the underlying condition itself. In resolving those conflicting opinions, one member found Carr's opinion more persuasive, but a majority of the board found that "Wayson's opinion [was] better explained and more consistent with claimant's symptoms and the overall record[.]" Our role on judicial review is not to reweigh the evidence or "choose sides" among the medical experts or the members of the board. *Armstrong*, 90 Or App at 206. Based on our review of the record, the board's resolution of the conflicting medical evidence was not unreasonable. Accordingly, we conclude that substantial evidence supports the board's finding that the 2008 foot injury was the major contributing cause of the worsening of claimant's L4-5 disc herniation.

Affirmed.